**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 270.]**

CHICAGO TITLE INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT, *v*.
THE HUNTINGTON NATIONAL BANK, APPELLANT AND CROSS-APPELLEE.

[Cite as *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 1999-Ohio-62.]

*Contracts—Insurance—Real property—Correct measure of damages under a
        mortgagee's title insurance policy when security fails due to an
        undiscovered prior lien.*

The correct measure of damages under a mortgagee's title insurance policy when
        security fails due to an undiscovered, prior lien is the amount the mortgagee
        would have received but for the presence of the senior lien.

(No. 98-2102—Submitted September 14, 1999–Decided December 8, 1999.)

APPEAL from the Court of Appeals for Delaware County, No. 98CAE03018.

_____

{¶ 1} In March 1995, the Huntington National Bank ("HNB"), appellant,
issued a bridge loan in the amount of $194,000 to Diane Hibbett for the construction
of a residence at 138 Aspen Court in Delaware, Ohio, and to pay off some consumer
debts. The loan was secured by a mortgage on two parcels of real estate, the one
located on Aspen Court and the other on Sulu Road in Delaware, Ohio. Appellee
Chicago Title Insurance Company ("Chicago Title") performed a title examination
for HNB and issued a title commitment showing no liens or encumbrances senior
to HNB on either property. Chicago Title issued to HNB a title insurance policy
with a face value of $194,000.

{¶ 2} In October 1995, Kenneth Hibbitt, the ex-spouse of Diane Hibbitt,
filed an action to foreclose upon a mortgage that he held on the Sulu Road property.
It is undisputed that Chicago Title did not discover this preexisting mortgage,
recorded in 1993, and did not exclude it from coverage under the policy issued to
HNB. Kenneth Hibbitt's mortgage was found to have priority over the HNB

mortgage. HNB received $53,155.43 of the proceeds from the foreclosure sale and Kenneth Hibbitt received $40,841.17 that would have gone to HNB but for the undiscovered, senior lien.

{¶ 3} HNB made a claim against the title insurance policy for the $40,841.17 that was paid to Kenneth Hibbett. Chicago Title denied the claim on the basis that HNB had not suffered a compensable loss under the policy. Chicago Title claimed that because HNB continued to hold a first mortgage on the Aspen Court property, the bank could not establish a loss until the Aspen Court property was sold. Chicago Title agreed that, after foreclosure, if HNB was not made whole, then Chicago Title would "pay the amount required to make HNB whole or the amount received by Kenneth W. Hibbitt * * * whichever is less."

{¶ 4} Diane Hibbitt listed the Aspen Court property for sale with a realtor beginning February 21, 1996 at $181,900. A year later, the asking price was reduced to $174,900 because there had been no offers or interest shown in purchasing the property. During the entire eighteen-month period that the property was on the market, there were no purchase offers made.

{¶ 5} In October 1996, HNB initiated foreclosure proceedings on the Aspen Court property. The property was eventually sold to a third party on August 6, 1997 for the minimum bid of $115,000, two-thirds of the appraised value of $172,500. Representatives of both Chicago Title and HNB attended the sale but did not bid on the property. HNB received $112,883.46 from the sale proceeds but was still owed more than $60,000. HNB again demanded payment of $40,841.17, plus interest at 10.25 percent per annum, from Chicago Title, the amount that Kenneth Hibbitt had received instead of HNB due to the undiscovered, senior lien.

{¶ 6} Chicago Title disputed HNB's claim, contending that the correct measure of damages resulting from the undisclosed lien should be determined by the fair market value of the Aspen Court property. Chicago Title filed a declaratory judgment action in the Court of Common Pleas of Delaware County, seeking a

determination that it had no liability to HNB under the title insurance policy. HNB filed a counterclaim alleging that Chicago Title wrongfully denied its claim and negligently failed to discover Kenneth Hibbitt's senior mortgage on the Sulu Road property.

{¶ 7} The trial court awarded summary judgment to Chicago Title. The court concluded that the undisclosed lien on the Sulu Road property was an encumbrance that caused a loss to HNB. However, the Aspen Court property constituted adequate security to cover HNB's remaining debt because the property's fair market value, or appraised value, exceeded the amount of the debt. Thus, the bank failed to prove that any compensable loss had occurred. The court also determined that HNB had a duty to mitigate any damages by bidding on the Aspen Court property at foreclosure to protect its security. The court denied summary judgment on HNB's negligence claim.

{¶ 8} The court of appeals affirmed the finding that the measure of damages for a prior, undisclosed mortgage depends upon the value of the remaining security, not the cost to the mortgagee to remove the lien. However, the court disagreed that the property's fair market value is an issue of law. Therefore, the appellate court remanded for consideration of the fair market value of the Aspen Court property.

{¶ 9} The appellate court reversed on the issue of mitigation of damages. The court held that a lender is not required to bid on property at a foreclosure sale in order to minimize any loss that might result. Finally, the court agreed that no independent tort remedy existed for an insurer's failure to discover an encumbrance of record in a title insurance policy. The contractual remedies in the title insurance policy are the exclusive remedies available to the parties.

{¶ 10} This matter is before this court upon the allowance of a discretionary appeal and cross-appeal.

———————————

*Anthony M. Heald; Thompson, Hine & Flory LLP, Brett K. Bacon, Douglas L. Hertlein* and *Scott A. Campbell,* for appellee and cross-appellant.

*Schottenstein, Zox & Dunn, John P. Gilligan* and *Daniel M. Anderson;* and *Jody Michelle Oster,* for appellant and cross-appellee.

*Jeffrey D. Quayle,* urging reversal in part for *amicus curiae*, Ohio Bankers Association.

*Peter C. Dietze* and *Conrad R. Lattes, pro hac vice,* urging affirmance for *amicus curiae*, American Land Title Association.

_____

**LUNDBERG STRATTON, J.**

{¶ 11} The issues before us are the correct measure of damages under a mortgagee's title insurance policy when security fails due to an undiscovered, prior lien, whether a mortgagee has an obligation to bid on the subject property at the foreclosure sale in an effort to mitigate its damages, and the validity of HNB's tort claims for failure to discover the lien.

{¶ 12} For the reasons that follow, we reverse the judgment of the court of appeals in part and hold that the correct measure of damages under a mortgagee's title insurance policy when security fails due to an undiscovered, prior lien is the amount the mortgagee would have received but for the presence of the senior lien. The courts below incorrectly relied upon the fair market value of the property at the time of foreclosure to calculate whether or not HNB suffered an actual loss compensable under the policy.

{¶ 13} We also hold that a mortgagee has no obligation to mitigate damages by bidding on the property at foreclosure. With respect to HNB's tort claims for failure to discover the lien, the parties' rights and remedies are exclusively contractual in nature. HNB is limited to the contractual remedies in the policy. The judgment of the court of appeals is affirmed in part as to these issues.

MEASURE OF DAMAGES

**{¶ 14}** A title insurance policy is a contract between the insured and insurer. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph one of the syllabus. Thus, the construction of an insurance contract is a matter of law. *Latina v. Woodpath Development Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264. Our goal when construing the policy is to ascertain the intent of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Id.; Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. Just because the policy does not define a term does not mean that the policy is ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686.

**{¶ 15}** With these principles in mind, we begin by examining pertinent parts of the title insurance policy at issue. Chicago Title agreed to insure HNB against "loss or damage" incurred by reason of "[t]he priority of any lien or encumbrance over the lien of the insured mortgage." The policy's Conditions and Stipulations section describes the insurer's determination and extent of liability in paragraph 7 as "a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy." However, the policy did not define "loss" or "damage" or the method to calculate loss. There is no dispute that Chicago Title's liability could not exceed $194,000, the face value of the policy.

**{¶ 16}** The policy expressly excluded from coverage any damages that arise from "[d]efects, liens, encumbrances, adverse claims or other matters" either

"created * * * by the insured" or "resulting in no loss or damage to the insured claimant." Based upon these exclusions, Chicago Title argues that it has no liability. The insurer contends that HNB suffered no compensable damages because the fair market value of the Aspen Court property exceeded the amount due HNB, and that HNB created its loss by failing to bid on the Aspen Court property at foreclosure.

{¶ 17} One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss. *Inland Rivers Service Corp. v. Hartford Fire Ins. Co*. (1981), 66 Ohio St.2d 32, 20 O.O.3d 20, 418 N.E.2d 1381. It is undisputed that Chicago Title insured the priority of HNB's liens on both the Aspen Court and Sulu Road properties. It is also undisputed that HNB's lien did not have first priority with respect to the Sulu Road property and that Chicago Title failed to discover Kenneth Hibbitt's senior lien. The question is whether HNB suffered any "actual monetary loss or damage" because of the undisclosed mortgage on the Sulu Road property, and, if so, to what extent.

{¶ 18} The courts below agreed with Chicago Title that any loss should be measured against the fair market value of the Aspen Court property, HNB's remaining security, at the time of its foreclosure. The courts made this finding despite the absence of language in the policy that links the insured's loss or damage to the fair market value of the security. We find that not only is this method of loss calculation not supported by the policy's language, but also the use of this measure of damages contradicts the term "actual loss" that is used in the policy to determine Chicago Title's extent of liability.

{¶ 19} Although the policy does not define loss, it does refer to the insured's "actual loss" when discussing the company's extent of liability. The word "actual" means something that exists in fact or reality. "Actual" is not merely possible, but real. See, Webster's Third New International Dictionary (1986) 22. Therefore,

6

based on the language used in the policy, the parties intended for an insured's loss, caused by matters insured against by the policy, to be a real loss, one based on fact, not speculation or possibility.

{¶ 20} Consequently, we agree that HNB's interpretation of "actual loss" comports with a reasonable interpretation of the policy language. Here, the property was subject to foreclosure — a forced sale that takes place without the time or opportunity to find a buyer willing to pay an amount that approaches the reasonable worth of the property. *Bowers v. Sears* (1961), 172 Ohio St. 443, 447, 17 O.O.2d 417, 419, 178 N.E.2d 240, 243; *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 58 O.O. 179, 131 N.E.2d 397. The fair market value of property, based upon what a willing buyer will give to a willing seller on the open market, does not apply in situations where there is a forced sale with no willing seller who has the time to obtain the highest or best price for the property. *Bowers, op. cit.*

{¶ 21} The appropriate measure of damages is based upon what the buyer actually paid at the foreclosure sale and what the lender actually received, not a hypothetical valuation based on speculation had the property been sold on the open market. Kenneth Hibbitt received $40,841.17 of the sale proceeds in the Sulu Road foreclosure because his lien was given priority over HNB's lien. Chicago Title initially denied HNB's claim pending the foreclosure of the second secured property on Aspen Court. However, following the foreclosure of both secured properties, HNB's indebtedness remained in excess of $60,000. Had Chicago Title discovered and disclosed the prior lien, the amount of HNB's deficiency would have been $40,841.17 less. The actual monetary loss to HNB by reason of matters insured against by this policy was the amount paid to satisfy the Hibbitt lien, $40,841.17.

{¶ 22} This was the measure of damages proposed by Chicago Title when HNB initially made a claim against the policy following the Sulu Road sale. Chicago Title represented to HNB that if HNB was not made whole after

foreclosure on the Aspen Court property, then Chicago Title would "pay the amount required to make HNB whole or the amount received by Kenneth W. Hibbitt * * * whichever is less." Chicago Title's original position was a reasonable interpretation of the policy and met the policy's requirement to pay the insured's "actual loss." If Chicago Title intended for an insured's loss to be measured by using the secured property's fair market value, then Chicago Title should place that description in the policy instead of referring to "actual loss."

{¶ 23} We believe that the use of the actual sale price of the secured property to measure loss instead of an estimated fair market value provides the parties with a conclusive method of valuation that is not based on opinion or speculation. It is determined at a certain point in time, based upon actual events rather than opinions using hypothetical circumstances.

{¶ 24} Courts in other states also have relied upon the actual foreclosure price instead of fair market value to determine loss contemplated by a title insurance policy. In *Fox Chase Bank v. Wayne Junction Trust Co*. (1917), 258 Pa. 272, 101 A. 979, the insured property was encumbered by several mechanic's liens that were not excepted under a title insurance policy. The Pennsylvania Supreme Court held that under a title insurance policy indemnifying a mortgagee from damages due to the filing of mechanic's liens, a mortgagee's "loss was the fund that it failed to receive because of the liens, not what someone might estimate the market value of the mortgage or property." *Id*. at 276, 101 A. at 980. The court explained that "[i]t is not necessary to estimate the value of property when the rights of the parties have been determined by its actual value as shown by a judicial sale." *Id.*

{¶ 25} In *Title Ins. Co. of Richmond v. Indus. Bank of Richmond* (1931), 156 Va. 322, 157 S.E. 710, the priority of an insured's lien was defeated by street assessments that existed prior to the delivery of the title insurance policy but were not listed as a defect on the title. The Virginia court followed the rule set forth in *Fox Chase* and valued the insured's loss by the amount obtained at a foreclosure

sale, not by appraisal or a subsequent resale price. See, also, *Bluff Ventures Ltd. Partnership v. Chicago Title Ins. Co.* (C.A.4, 1991), 950 F.2d 139. Finally, in an action by a mortgagee for damages under a title insurance policy, a New York court held that the market price of property, if different from the actual foreclosure price, was irrelevant to the actual loss under an indemnity title insurance policy. *Grunberger v. Iseson* (1980), 75 A.D.2d 329, 429 N.Y.S.2d 209.

**{¶ 26}** Chicago Title argued that there is a distinction between an owner's title insurance policy and a mortgagee's title insurance policy relating to the measurement of loss. For purposes of determining a loss in this case, we need not make such a distinction. This policy was a contract of indemnity and HNB seeks indemnification for the impairment of its security. HNB has proven that it is entitled to recover the cost of removing the undisclosed lien.

## MITIGATION OF DAMAGES

**{¶ 27}** Chicago Title argues that HNB was obligated to bid on the Aspen Court property at foreclosure in order to mitigate its damages. Chicago Title claims that had HNB purchased the property and resold it at an amount more in line with the property's fair market value, rather than allowing it to be sold for only two-thirds of its appraised value, then HNB may have minimized its loss. According to Chicago Title, by failing to mitigate its damages, HNB created this loss and the policy expressly excludes coverage for damages created by the insured. We do not agree.

**{¶ 28}** Although not required by foreclosure laws in Ohio, a mortgagee may elect to bid on the property in foreclosure or otherwise take affirmative steps to prevent the property from being sold at a loss. However, the title insurance policy at issue did not require the insured to bid or otherwise assume the burdens and obligations of ownership for the sole purpose of minimizing damages caused by the insurer's breach. If an insurer wants its insured to be obligated to mitigate damages by purchasing the secured property in a foreclosure situation in order to recover

under a title insurance policy, this should be made a condition precedent to recovery under the policy that is expressly written into the policy.

{¶ 29} The general rule is that an injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided. However, the obligation to mitigate does not require the party to incur extraordinary expense and risk. *S & D Mechanical Contrs., Inc. v. Enting Water Conditioning Sys., Inc.* (1991), 71 Ohio App.3d 228, 593 N.E.2d 354. Diane Hibbitt had tried to sell the Aspen Court property for a period of eighteen months before the foreclosure sale occurred. There were no bids on the property despite the fact that she reduced the asking price from $181,900 to $174,900. Had HNB purchased the Aspen Court property at the foreclosure sale, it also may have encountered difficulties in reselling the property on the open market. There would be additional expenses incurred during an indefinite period of ownership for things such as utilities, maintenance, taxes, interest, and resale. We agree that an injured party need not take such additional and extraordinary risks for the sole purpose of mitigating damages.

{¶ 30} Furthermore, Chicago Title was present at the foreclosure sale but did not bid on the property. HNB cannot be held responsible for failure to bid on the secured property in foreclosure in order to minimize damages when Chicago Title had an equal opportunity to do so. When both parties have the same opportunity to reduce damages, a defendant cannot later contend that the plaintiff failed to mitigate. *Shea-S & M Ball v. Massman* (C.A.D.C.1979), 606 F.2d 1245, 1249; See, also, *Walker v. Transamerica Title Ins. Co*. (1992), 65 Wash.App. 399, 828 P.2d 621. We agree with the appellate court that a mortgagee is not obligated to mitigate its damages by bidding on the secured property in foreclosure.

NEGLIGENCE CLAIMS

{¶ 31} HNB filed an independent tort claim based upon Chicago Title's negligent failure to discover and disclose the existence of a superior mortgage.

Based on the merger clause in Section 14(b) of the policy's Conditions and Stipulations section that restricts any claim of loss or damage, including negligence claims, to the policy provisions, we find that HNB's negligence claim fails. The policy language explicitly precludes an independent tort action by HNB for negligence arising out of the status of its lien or of title to the secured property. Therefore, HNB is limited to the contractual remedies available in the policy, and its negligence claim fails.

### CONCLUSION

{¶ 32} It is undisputed that Chicago Title failed to disclose the Hibbitt lien on the Sulu Road property that was superior to HNB's lien. But for Hibbitt's lien on the Sulu Road property, HNB would have recovered an additional $40,841.17 from the Sulu Road foreclosure sale. The sale of the Aspen Court property did not yield sufficient proceeds to cover HNB's debt. HNB has met its burden of proving a loss under the policy. Chicago Title is liable to indemnify HNB in the amount of $40,841.17, plus interest.

{¶ 33} Therefore, we reverse the judgment of the court of appeals in part and affirm in part. We find Chicago Title liable to HNB in the amount of $40,841.17, plus interest and costs.

*Judgment affirmed in part*
*and reversed in part.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————