OPINION
Appellant, Commercial Intertech Corp., f.k.a. Commercial Shearing, Inc. ("Commercial"), appeals from a decision of the Portage County Court of Common Pleas granting judgment in favor of appellee, Guyan International, Inc., d.b.a. Permco, Inc. ("Permco"), in a breach of contract action. The following facts are relevant to a determination of this appeal.
Both parties to this action are northeast Ohio companies involved in the manufacture, marketing, distribution, and sale of hydraulic and pneumatic products, including pumps and motors. They are long-time competitors. In 1980, Commercial brought an action against Permco in the United States District Court for the Northern District of Ohio, Eastern Division, seeking injunctive relief and damages for copyright infringement, patent infringement, unfair competition, and false designation of origin. Permco admitted that prior to 1980, some of its products were exactly the same as those manufactured by Commercial.
On December 8, 1980, an agreement was executed by the parties resolving the federal court case. That agreement contained the following provision relevant to the present case:
 "PERMCO will not sell, and will not distribute or make available on a regular basis by means of an affiliated company in which PERMCO has a controlling interest, assembled oil hydraulic gear-type pumps and motors made with envelope parts that duplicate the outer configuration of envelope parts manufactured by COMMERCIAL."
 In early 1999, Permco began to distribute a new product, the P2100 pump. On July 14, 1999, Commercial filed the underlying suit against Permco claiming that the manufacture and sale of the P2100 violated the aforementioned provision of the 1980 settlement agreement. Commercial claimed that the P2100 is made with envelope parts that duplicate the outer configuration of the envelope parts of its own P20 series gear-type pumps and motors.
The matter proceeded to a trial to the court on November 9, 1999. On November 17, 1999, the trial court issued a final judgment resolving all issues in favor of Permco, stating, in pertinent part:
 "This Court has reviewed the various definitions of the word duplicate, has examined the pumps submitted for comparison and the other evidence submitted by the parties and from such finds that, while the Defendant's pump is very similar, it is not a duplicate. There are variations in the outer configuration as well as size and these variations distinguish the two pumps. A buyer or distributor, upon close examination, can differentiate between the two pumps."
 Commercial timely filed a notice of appeal and has now set forth the following assignments of error:
 "1. The trial court erred by failing to properly construe the contract between the parties.
 "2. The trial court erred by applying a tort analysis in determining whether Appellee breached a settlement contract with Appellant."
 In the first assignment of error, Commercial claims that the trial court erred by failing to properly construe the 1980 settlement agreement.
First, it is apparent that the crux of the dispute between the parties centers on the use of the word "duplicate" in the settlement agreement. Is Permco's P2100 pump a duplication of Commercial's P20? While that term is not defined in the settlement agreement, the absence of a definition in a contract does not, in and of itself, make that contract ambiguous. Nationwide Mut. Fire Ins. Co. v. Guman (1995),73 Ohio St.3d 107, 108; Chicago Title Ins. Co. v. Huntington Natl. Bank
(1999), 87 Ohio St.3d 270, 273.
The general rule is that if a term of a contract is clear and unambiguous, a court may not find an intent not expressed in the clear language employed by the parties. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246. Accordingly, when the terms of a contract are unambiguous, the court cannot substitute a different meaning. Burris v. Grange Mut. Ins. Cos. (1989), 46 Ohio St.3d 84, 89. "Common words appearing in the agreement will be given their plain and ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the contract."Convenient Food Mart, Inc. v. Con. Inc., No. 3-007 (Sept. 30, 1996), Lake App. No. 95-L-093, unreported, at 8. Hence, when the language is clear and unambiguous, a court cannot resort to construction of the language.Holliman v. Allstate Inc. Co. (1999), 86 Ohio St.3d 414, 418.
The fact that a court resorts to checking the definition of a particular word in a dictionary, as the trial court did in the present case with respect to "duplicate," does not mean that the document is ambiguous. Numerous courts have found a contract to be unambiguous while, at the same time, checking a dictionary definition to determine the clear and ordinary meaning of a word. Guman, supra; Hrynciw v. StateAuto Ins. Cos. (Mar. 31, 1998), Lucas App. No. L-97-1267, unreported, 1998 WL 161200; Graham v. Drydock Coal Co. (Dec. 29, 1994), Athens App. No. 93CA1599, unreported, 1994 WL 725149. A dictionary definition does not amount to parol evidence. It is a reliable source for finding the plain and ordinary meaning of a word. Rite Aid of Ohio, Inc. v. Marc'sVariety Store, Inc. (1994), 93 Ohio App.3d 407, 415.
In the case sub judice, there is no need to resort to construction of the language, or to consider parol evidence. A review of the trial court's judgment entry gives no indication that the trial court did so. Instead, it appears that the trial court properly considered the plain and ordinary meaning of the words in the agreement. As previously stated, checking various dictionary definitions of a certain word does not equate with a finding of ambiguity. The trial court examined the different pumps and heard testimony from both sides on the similarities and differences between the pumps. The court concluded that while they were "very similar," they were not "duplicates" and, accordingly, no breach of contract occurred. We do not find error in this conclusion.
Based upon the foregoing analysis, Commercial's first assignment of error is without merit.
In the second assignment of error, Commercial contends that the trial court erred by applying a tort analysis in determining whether or not a breach of the settlement agreement occurred. Specifically, Commercial argues that the trial court's judgment entry is devoid of any language indicating that a contract analysis was employed but, instead, shows signs that the court improperly used an unfair competition analysis.
We believe, however, that the mere fact that the trial court did not specifically state that it was applying a contract analysis does not mean that it failed to use such analysis. The issue before the court was whether Permco breached the 1980 settlement agreement by selling or distributing a pump made with "envelope parts that duplicate the outer configuration of envelope parts manufactured by Commercial." In order to make this determination, the trial court had to examine and compare the two pumps, and hear evidence as presented by both sides. The trial court acted accordingly. Additionally, the 1980 settlement agreement was the result of the resolution of a lawsuit that was based, in part, on a claim of unfair competition. Thus, it only makes sense that in determining whether a breach occurred, the trial court would examine whether or not consumer confusion would result from the sale of both pumps. The elimination of such confusion was clearly the object of the settlement agreement.
Hence, the trial court did not apply the wrong analysis in deciding this dispute. Commercial's second assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
 ________________________________________ PRESIDING JUDGE WILLIAM M. O'NEILL
CHRISTLEY, J., GRENDELL, J., concur.