JOURNAL ENTRY AND OPINION
In this action for breach of contract, appellants Steven and Nancy Zeiger (the Zeigers) appeal from a decision of the trial court that granted appellees Midland Title Security (Midland), First American Title Insurance Company (First American) and Alan and Mary Shon's (the Shons) motion for summary judgment on appellants' claims. Upon review, we conclude that there is no genuine issue as to any material fact and that appellees are entitled to judgment as a matter of law on appellants' claims. Accordingly, we affirm the trial court's decision.
On June 5, 1995, the Zeigers entered into a contract to buy real estate located at 17866 Beach Road, a.k.a. 916 Beach, Lakewood, Ohio 44107, from the Shons for the sum of $320,000. This property is located in an area known as the Clifton Lagoons, on the Rocky River just south of Lake Erie. The property contains a residential house and an attached boathouse.
Paragraph J of the real estate contract includes a provision calling for the Shons to provide the Zeigers with a General Warranty Deed which was to convey the property to the Zeigers free and clear of all encumbrances and encroachments except those conditions which do not materially adversely affect the use or value of the Property.
The real estate contract also required the issuance of an owner's policy of title insurance. Such a policy was issued by First American, through its agent Midland, in the amount of $320,000. The policy insured that the title to the property vested free and clear to the Zeigers and that the property was free and clear of all encumbrances, liens and mortgages. It also contained a provision that excluded from coverage any defect or encumbrance resulting in no damage to the insured claimant. The policy section concerning the determination of damages and extent of liability states as follows:
 This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured by this policy and only to the extent herein described. (a) The liability of the Company under this policy shall not exceed the least of:
 (i) The amount of insurance stated in Schedule A; or
 (ii) The difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien, encumbrance insured against in this policy.
After the sale was completed, the Zeigers discovered that the property was subject to encroachments of approximately 1.5 feet as a result of structures erected on the property by adjoining landowners. Specifically, the boat house is 1.5 feet narrower than is stated in the property description. The Zeigers claim these encroachments substantially diminish the value of and adversely affect the use of their property.
The Zeigers notified First American and Midland of the encroachmentson their property and obtained an appraisal in order to establish the amount of damages. James Caldwell, the certified appraiser hired by the Zeigers, determined that the value of the property was $335,000 less a builder's estimate to correct the encroachments. Alan Russ of Russ 
Company estimated that the cost of the repairs would be $225,000 to $275,000. The Zeigers submitted these figures to First American and Midland.
First American and Midland hired their own appraiser, John Braman, to estimate the fair market value of the property. He determined that the value of the property was $350,000. He also stated that the estimate of market value measuring the impact before and after the 1.5 foot difference in the width of the entrance to the boat garage indicates no significant variation and therefore no diminution of the estimate of the market value reported above.
Based on the appraisals, First American and Midland determined that the encroachments did not cause damage to the property or cause a decrease in the value of the property as defined in the policy of title insurance and denied the Zeigers' claim.
On November 20, 1998, the Zeigers filed their complaint in the trial court seeking to enforce their rights under the title insurance policy issued by First American and Midland, for an award of damages as a result of First American and Midland's failure to act in good faith, and for negligence in failing to inform them of the encroachment. The Zeigers also filed a claim against the Shons for breach of contract and breach of the conditions and covenants contained in the deed they provided to the Zeigers.
On March 1, 2000, First American and Midland filed a motion for summary judgment claiming that the Zeigers had not suffered any insured loss or damage by the encroachments. On March 7, 2000, the Shons filed a motion for summary judgment claiming that the encroachments do not adversely affect the use or value of the property. On May 19, 2000, both motions were granted by the trial court.
The Zeigers now appeal this decision claiming two assignments of error. Assignment of Error I states:
 I. SINCE THE RECORD CONTAINS CONSIDERABLE EVIDENCE FROM WHICH A JURY CAN CONCLUDE THAT THE ZEIGERS SUFFERED DAMAGE AND LOSS AS A RESULT OF THE ADMITTED ENCROACHMENT, SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED IN FAVOR OF FIRST AMERICAN TITLE AND MIDLAND TITLE.
In their first assignment of error, the Zeigers claim that the trial court erred in granting summary judgment in favor of First American and Midland because genuine issues of material fact existed concerning whether they suffered damage and loss as a result of the admitted encroachment. First American and Midland maintain that summary judgment in their favor was appropriate because the Zeigers failed to show any insured loss or damage as defined under the policy of title insurance. The issue here is whether the trial court properly granted First American and Midland's motion for summary judgment.
We begin by noting that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378; citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in First American and Midland's favor was appropriate.
A policy of title insurance is a contract between the insured and insurer. Chicago Title Insurance Company v. The Huntington National Bank (1999), 87 Ohio St.3d 270. The construction of an insurance contract is a matter of law. Id; Latina v. Woodpath Development Co. (1991),57 Ohio St.3d 212, 214. The goal when construing the policy is to ascertain the intent of the parties. Id; Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997),78 Ohio St.3d 353, 361. The policy must be examined as a whole with the presumption that the intent of the parties is reflected in the language used in the policy. Id.
Here, the policy in question provides:
 SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
* * *
 2. Any defect in or lien or encumbrance on the title;
 The company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.
 EXCLUSIONS FROM COVERAGE The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
* * *
 3. Defects, liens, encumbrances, adverse claims or other matters:
* * *
 (c) resulting in no loss or damage to the insured claimant.
The above sections of the policy are clear and unambiguous. First American agreed to pay for losses caused by any defect in or lien or encumbrance on the title. However, First American is not responsible for any loss or damage caused by defects resulting in no loss or damage to the insured claimant.
While the parties dispute whether the admitted encroachments resulted in loss or damage to the Zeigers, the policy clearly defines the measure of damages to be used in calculating loss. Specifically, paragraph seven of the Conditions and Stipulations of the policy provides:
 CONDITIONS AND STIPULATIONS * * *
7. DETERMINATION, EXTENT OF LIABILITY AND
 COINSURANCE This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured by this policy and only to the extent herein described.
 (a) The liability of the Company under this policy shall not exceed the least of:
* * *
 (ii) The difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien, encumbrance insured against in this policy.
These sections of the policy are clear and unambiguous. The measure of damages is determined by the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect * * *. While the Zeigers maintain that the measure of damages should be the cost of repairing the encroachment, the contract does not provide as such and only insures the Zeigers for actual loss suffered due to the encroachment.
Where the provisions of contract are set out in express and unambiguous terms, a court cannot make a new contract for the parties * * * the language employed must be given its usual and ordinary meaning." Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107; Jackson v. Metropolitan Life Ins. Co. (1973),34 Ohio St.2d 138.
Here, the property, as insured, was valued at $320,000. The Zeigers' appraiser appraised the property at $335,000.[1] Therefore, based on the express language of the policy which determines how to calculate loss, the property's market value exceeds the value of the property as insured and the Zeigers have not suffered an actual monetary loss as defined under the policy of title insurance. Accordingly, the Zeigers' breach of contract claim against First American and Midland fails as a matter of law.
 II. SINCE THE RECORD CONTAINS CONSIDERABLE EVIDENCE FROM WHICH A JURY CAN CONCLUDE THAT THE ADMITTED ENCROACHMENT ADVERSELY AFFECTED THE ZEIGERS' USE AND ENJOYMENT OF THE PROPERTY, SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED IN FAVOR OF THE SHONS.
In their second assignment of error, the Zeigers claim that the trial court erred in granting summary judgment in favor of the Shons because genuine issues of material fact existed as to whether the admitted encroachment adversely affected their use and enjoyment of the property. The Shons maintain that summary judgment in their favor was appropriate because there was no evidence to establish that the encroachment caused the Zeigers to suffer any loss according to the measure of damages in Ohio.
Here, it is undisputed that the property sold by the Shons to the Zeigers had an encroachment. The Purchase Agreement entered into between the parties specifically provides that the Shons, as the sellers, were to provide a general warranty deed free and clear of all liens and encumbrances except:
 (a) those encroachments . . . which do not materially adversely affect the use or value of the property * * *.
Thus, the issue becomes whether the admitted encroachments materially and adversely affect the use and value of the Zeiger's property.
Here, the Zeigers purchased the property from the Shons for $320,000 before they discovered the encroachments. The Zeigers' appraiser estimates the fair market value of the property at $335,000 after they discovered the encroachments. Thus, the difference between the price of the property before the encroachments were discovered and the value of the property after the encroachments were discovered is actually an increase of $15,000. Accordingly, because the fair market value has actually increased since the Zeigers purchased the property from the Shons and discovered the encroachments, the Zeigers have not suffered any loss to the value of their property as a result of the encroachments.
With regard to whether the Zeigers' intended use of their property was adversely affected, the Zeigers admit that they are able to use the boathouse for the purpose of docking their 28-foot boat. (Tr. 30). Although the Zeigers claim that they cannot park a 45-foot or 50-foot boat inside the boathouse, they do not currently own such a boat. Rather, the Zeigers speculate that they may suffer a loss at some undetermined time in the future if they decide to buy a bigger boat and it does not fit into the boathouse.
In order to recover damages, the injury and resulting damage must be shown with certainty and not be left to conjecture and speculation. State, ex rel. Martinelli v. Corrigan (1991), 71 Ohio App.3d 243, 248. Mere speculation cannot be considered by the trial court or the appellate court. Id. Since the Zeigers are able to use the boathouse for the purpose of docking their current boat, they have not demonstrated that their use of the property has been adversely affected. Accordingly, the Zeigers' claim against the Shons fails as a matter of law.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________ JAMES J. SWEENEY, J.:
FRANK D. CELEBREZZE, JR., P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] The Zeigers' appraiser's report indicates that he estimated the market value of the property as $335,000 without an allowance for the correction of the encroachment. However, since the correction is the estimated cost to cure or remove the encroachments, the appraisal of $335,000 is the estimated market value of the property in its current condition with the encroachments.