**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0373n.06

**Case No. 15-4154**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JACQUIN CLIFFORD, et al., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| CHURCH MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | O P I N I O N |

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge.*

**McKEAGUE, Circuit Judge.** Lonnie Aleshire Jr., an associate pastor at Licking Baptist Church, sexually molested Sandra Cottrell on numerous occasions when she was thirteen and fourteen years old and raped her older sister Jacquin when she was sixteen. Aleshire pleaded guilty to unlawful sexual conduct with a minor, sexual imposition, and rape, and spent seven years in prison. Sandra, Jacquin, and their parents (collectively Plaintiffs) sued Aleshire for sexual assault, sexual battery, intentional infliction of emotional distress, false imprisonment, and loss of consortium. An Ohio jury found Aleshire liable and awarded $4.35 million in damages. Plaintiffs then sued Defendant, Church Mutual Insurance Company, to recover for the award against Aleshire under an insurance policy (the Policy) Defendant issued to the Church. The district court granted summary judgment in Defendant's favor.

* The Honorable William O. Bertelsman, United States Senior Judge for the Eastern District of Kentucky, sitting by designation.

Plaintiffs cannot recover for their claims, which were based on Aleshire's sexual acts, because the Policy does not cover an individual's sexual misconduct and because Ohio public policy prohibits insurance for sexual abuse of a minor. Plaintiffs try to circumvent this lack of coverage by making a post hoc argument that their claims included three non-sexual incidents of false imprisonment, which they assert were covered by the Policy. But Plaintiffs did not present separate, non-sexual claims at trial, and Aleshire's full liability stems from his sexual acts. Plaintiffs cannot transform sexual (non-covered) claims into non-sexual (covered) claims just because the Policy does not cover the claims they presented at trial. Accordingly, we AFFIRM.

## I

### A.      Factual Background

Plaintiffs are former members of Licking Baptist Church in Hebron, Ohio. Defendant is a Wisconsin corporation specializing in insurance for religious organizations. Defendant issued the Policy to the Church in 2001 and again in 2004. Aleshire served several roles at the Church in 2003 and 2004, including associate pastor, deacon, youth leader, and choir director.

During this time, Aleshire sexually molested Sandra Cottrell (now Sandra Whitman) around fifty times when she was just thirteen or fourteen years old. These acts occurred at the Church, on occasions when Aleshire drove Sandra to or from his home for her to babysit his children, and during trips to a children's hospital where Sandra was visiting a dying friend.

Aleshire also raped Sandra's older sister, Jacquin Cottrell (now Jacquin Clifford), in June 2004, when she was sixteen years old. Jacquin reported the rape in January 2005, at which point Sandra disclosed that Aleshire had molested her. Aleshire pleaded guilty to six counts of unlawful sexual conduct with a minor, three counts of sexual imposition, and one count of rape. He served seven years in prison.

**B.    Underlying Lawsuit**

In April 2007, Plaintiffs filed a civil complaint in the Licking County Court of Common Pleas against Aleshire, the Church, and Lonnie Aleshire Sr., the Church's pastor and Aleshire's father.    The trial court granted the Church's and Aleshire's father's motions for summary judgment, finding that Aleshire was not acting in his official capacity as an employee or volunteer of the Church, and the Ohio Court of Appeals affirmed.  *Clifford v. Licking Baptist Church*, No. 09 CA 0082, 2010 WL 1254632, at *2, 6, 9 (Ohio Ct. App. Mar. 26, 2010). Plaintiffs re-filed their lawsuit in June 2010, suing only Aleshire for his sexual misconduct. They raised claims for sexual assault, sexual battery, intentional infliction of emotional distress, false imprisonment, and loss of consortium.

At trial, Plaintiffs presented evidence of Aleshire's sexual molestation of Sandra and his rape of Jacquin.  Sandra's and Jacquin's testimony focused on Aleshire's sexual acts, and their parents' testimony centered on the devastating impact Aleshire's acts had on their family. Plaintiffs made no attempt to present separate claims for relief that were unrelated to Aleshire's sexual acts.  There was no testimony, argument, or discussion of false imprisonment, or of Aleshire confining Sandra or Jacquin or holding them against their will, separate from Aleshire's sexual misconduct.  To the contrary, Plaintiffs' counsel emphasized time and again that the purpose of the lawsuit was to hold Aleshire accountable for his sexual misconduct.

The jury did just that, as it found Aleshire liable and awarded Plaintiffs approximately $4.35 million in damages: $1 million in non-economic and $1 million in punitive damages to Sandra; $250,000 in non-economic and $1 million in punitive damages to Jacquin; and $550,311.50 to each of their parents.  The jury did not, however, allocate the award between the various claims for relief.

C.      **Procedural Background**

Defendant paid for Aleshire's defense in Plaintiffs' lawsuit, but informed Aleshire and Plaintiffs that the Policy did not cover Aleshire for any liability.  Following trial, Defendant refused to pay Plaintiffs for the award against Aleshire, leading Plaintiffs to file the current lawsuit in state court to recover for the jury award.  Plaintiffs assert that the Policy covered their claims under its: (1) bodily injury provision; (2) medical expense provision; (3) professional counseling provision; and/or (4) personal injury provision.  Defendant removed the case to the district court on the basis of diversity jurisdiction.

After the parties filed cross-motions for summary judgment, the district court ruled in Defendant's favor.  *Clifford v. Church Mut. Ins. Co.*, No. 2:13-cv-853, 2015 WL 6119436 (S.D. Ohio Sept. 30, 2015).  The court held that the claims for Aleshire's sexual acts were not covered by the Policy, and also concluded that liability insurance for sexual abuse of a minor is against Ohio public policy.  *Id.* at *6–10.  The court then identified three other incidents as potential non-sexual claims for false imprisonment, but found that Plaintiffs failed to show that Defendant was liable based on these three incidents.  *Id.* at *10–16.

Specifically, the court found that the Policy's personal injury provision may provide coverage for the non-sexual incidents.  *Id.* at *14.  However, the court held that, under Ohio law, Plaintiffs had the burden to allocate a general verdict between covered and non-covered claims. *Id.* (citing *World Harvest Church v. Grange Mut. Cas. Co.*, No. 13AP-290, 2013 WL 6843615, at *4, 7 (Ohio Ct. App. Dec. 24, 2013), *rev'd on other grounds*, No. 2014-1161, --- N.E.3d ---, 2016 WL 2754889 (May 12, 2016)).  Because Plaintiffs did not provide "any indication as to the jury's awards' breakdown or that the jury even considered these [non-sexual] occasions as separate tortious instances," they did not meet their burden and could not recover.  *Id.*  The court

granted in part and denied in part Defendant's motion for summary judgment, and directed the clerk to terminate the case. *Id.* at *14, 16. Plaintiffs timely appealed.

## II

We review a grant of summary judgment *de novo*. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The inquiry is whether a reasonable jury could return a verdict for the non-moving party or "whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The parties agree that Ohio law governs interpretation of the Policy, which is an insurance contract. "Under Ohio law, the interpretation of an unambiguous insurance contract presents a question of law that an appellate court reviews de novo." *Bondex Intern., Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011) (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995)). Where the policy sets forth the relevant coverages and exclusions in unambiguous terms, we must apply the terms according to their plain and ordinary meaning. *Id.* at 677 (citing *Cincinnati Indem. Co. v. Martin*, 710 N.E.2d 677, 679 (Ohio 1999)). "One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss," *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999), while "insurance companies bear the burden of demonstrating that an insurance claim falls within an exclusion to coverage." *Bondex*, 667 F.3d at 677 (citations omitted). Thus, Plaintiffs have the burden of demonstrating

that the Policy covered their claims, while Defendant has the burden of demonstrating that an exclusion applied to deny coverage.

Plaintiffs raise three issues on appeal. First, they argue the district court abused its discretion in denying their motion to remand to state court. Second, they argue the district court erred in determining that the Policy did not cover claims based on Aleshire's sexual misconduct. Third, they alternatively argue that they are entitled to recover the full $4.35 million judgment based on three non-sexual incidents between Aleshire and Sandra. We reject each in turn.

**A**

Despite this case meeting the requirements for diversity jurisdiction, Plaintiffs first argue that the district court should have remanded to state court based on its discretionary authority for declaratory judgment actions. We review for abuse of discretion. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000) (citations omitted). Our circuit uses a five-factor test, laid out in *Grand Trunk W. R.R. Co. v. Consol. Rail. Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The district court found that three factors weighed in favor of retaining federal jurisdiction, one factor weighed in favor of remand to state court, and one factor was neutral.

Plaintiffs present only a barebones argument that the district court incorrectly weighed the factors, alternatively arguing that even one factor in their favor requires remand. Plaintiffs' argument is wholly without merit. The district court properly applied the test from *Grand Trunk*, and further analysis would be duplicative and is unnecessary. We agree that federal jurisdiction is proper in this case.

**B**

Plaintiffs next appeal the district court's decision that they could not recover for Aleshire's sexual acts. Plaintiffs' argument is unpersuasive, as they cannot recover under the Policy's terms and are further barred by Ohio public policy.

*The Policy.* The Plaintiffs contend that Aleshire's sexual acts were covered by the Policy's: (1) bodily injury provision; (2) medical expense provision; (3) professional counseling provision; and/or (4) personal injury provision. The Policy includes an additional provision, however, titled "Sexual Misconduct or Sexual Molestation Liability Coverage." It provides:

> 1. Except for the insurance provided by sexual misconduct or sexual molestation liability coverage, the policy does not apply to nor do we have any duty to defend, any claim or "suit" seeking damages arising out of any actual or alleged act of "sexual misconduct or sexual molestation[.]"
> ****
> 3. Exclusions. This insurance *does not apply to:*
>
> > *a. Any person who personally participated in any act of "sexual misconduct or sexual molestation."*

R. 61-1, Policy at 49–50, PID 1209–10 (emphasis added). Plaintiffs do not dispute that Aleshire's acts constitute sexual misconduct or sexual molestation. Thus, under Exclusion 3.a, Aleshire's sexual acts are not covered by this provision.

The Policy's remaining provisions also exclude coverage for Aleshire's sexual acts. The bodily injury, professional counseling, and personal injury provisions specifically exclude damages arising out of acts of "sexual misconduct and sexual molestation." *See* R. 61-1, Policy at 47, 48, 83, Bodily Injury Provision Exclusion 2.p, PID 1207; Personal Injury Provision Exclusion 2.a(5), PID 1208; Professional Counseling Provision Exclusion 2.i, PID 1243. The medical expense provision provides coverage only for "bodily injury" caused by an "accident." *Id.* at 50, Medical Expense Provision Section 1.a, PID 1210. Under Ohio law, Aleshire's

intentional sexual acts were not "accidents." *See Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1119–20 (Ohio 1996). Thus, because all relevant Policy provisions exclude coverage for Aleshire's sexual acts, Plaintiffs cannot recover for claims based on those acts.

*Ohio Public Policy.* Even if the Policy itself did not exclude coverage, the public policy of the State of Ohio prohibits liability coverage for sexual abuse of minors. *Id.* at 1120. In *Gearing*, a neighbor (Gearing) sexually molested three minor girls and pleaded guilty to three felony counts of gross sexual imposition. *Id.* at 1116. The family filed a civil lawsuit against Gearing, and he brought a declaratory judgment action to require his homeowner's insurance carrier to defend and indemnify him. *Id.* The family intervened to similarly assert that the homeowner's policy provided coverage for their tort claims. *Id.*

The Ohio Supreme Court held that the insurance policy did not cover Gearing's sexual misconduct. *Id.* at 1118. The policy in *Gearing* defined an insurable "occurrence" as an "accident," and the Ohio Supreme Court had "long recognized that Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts." *Id.* (citations omitted). Gearing's sexual abuse was not an accident because there is "nothing 'accidental' about acts of sexual molestation of children or harm resulting from that molestation; it is the result of the deliberate exercise of free will upon innocent and vulnerable victims." *Id.* at 1119. The court concluded that "incidents of intentional acts of sexual molestation of a minor do not constitute 'occurrences' for purposes of determining liability insurance coverage . . . . The public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries produced by criminal acts of sexual misconduct against a minor." *Id.* at 1120.

Plaintiffs' case is materially indistinguishable from *Gearing*. Aleshire, like Gearing, pleaded guilty to molesting minors. Plaintiffs, like the family in Gearing, seek damages from an

insurance company for an insured's sexual acts. And the Policy here uses the same definition for "occurrence" (an "accident") as the policy the Ohio Supreme Court analyzed in *Gearing*. *See* R. 61-1, Policy at 59, Definition 13, PID 1219.

Plaintiffs argue this case is different because it involves a *religious* insurance policy. They assert that, because religious institutions have reported numerous instances of sexual child abuse, Defendant, as a company that insures religious institutions, should be liable for Aleshire's sexual misconduct. Plaintiffs add that the public interest in compensating victims should outweigh any countervailing interest in denying coverage. Plaintiffs ask us to establish an exception to Ohio's general rule against sexual misconduct insurance, but they cite no case to suggest the Ohio Supreme Court would create such an exception. The cases they do cite are neither on point nor persuasive.[1] Because the public policy of Ohio prohibits insurance for sexual abuse of a minor, we affirm the district court's holding that Plaintiffs cannot recover for claims based on Aleshire's sexual acts.

## C

On appeal, Plaintiffs focus on an alternative, post hoc argument: they cite three non-sexual incidents between Aleshire and Sandra as potential claims for false imprisonment and assert that the jury "may have returned their verdict based on this conduct." Appellants Br. at 23. First, Plaintiffs cite an incident at Church camp where Aleshire, Sandra, and others were on a group hike, and Aleshire linked pinkies with Sandra. R. 61-10, Sandra Testimony at 171, PID

---

[1] Plaintiffs' only support for their religious distinction is the dissent in their previous suit against the Church. *Clifford*, 2010 WL 1254632, at *14 (Hoffman, P.J., dissenting). The dissent's argument related to whether the Church had a duty to have a policy to protect children, not whether there is an exception to the rule against sexual molestation insurance, and so has no bearing here. Plaintiffs' case support for public policy favoring the compensation of victims is also unhelpful. *See Yousuf v. Cohlmia*, 741 F.3d 31, 40 (10th Cir. 2014) (addressing insurer's duty to *defend*, rather than indemnify); *Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1261 (Colo. 1998) (holding that sexual abuse victim could recover for damages from counseling activities, but *not* for damages from sexual abuse); *Harasyn v. Normandy Metals, Inc.*, 551 N.E.2d 962, 964–66 (Ohio 1990) (holding, in a decision that predates *Gearing*, that an employer could insure for *unintentional* tort claims when it knew injury was substantially certain to occur).

1616. Second, they cite a subsequent incident where Aleshire asked to speak to Sandra in private, gave her a hug, and told her "I know we have feelings for each other." *Id.* at 172–74, PID 1617–19. Finally, they cite the many times Aleshire drove Sandra to the hospital to visit her dying friend and assert that on at least one occasion Aleshire did not sexually molest her. Plaintiffs argue that the damages at trial could have been allocated between these non-sexual incidents, which would be covered by the Policy, and their claims for Aleshire's sexual acts, which would not be covered. They then argue that Defendant had the burden to allocate damages between covered and non-covered claims, and assert that Defendant is liable for the full $4.35 million award because it did not request an allocated verdict.

The district court concluded that these non-sexual incidents—the "pinkie incident," the "hugging incident," and the "driving incident"—were "sufficiently clear" to consider, and that the Policy may cover them under the personal injury provision. *Clifford*, 2015 WL 6119436, at *11, 14. However, the court determined that Plaintiffs (not Defendant) had the burden to allocate the verdict, and because they failed to do so Defendant was entitled to summary judgment. *Id.* at *14. The district court relied on *World Harvest Church*, an unreported Ohio Court of Appeals case, for the general rule that the party seeking coverage (here, Plaintiffs) bears the burden of allocating a general verdict. *Id.* (citing *World Harvest Church*, 2013 WL 6843615, at *5). Plaintiffs counter that *World Harvest Church* established an exception, requiring an *insurer* (Defendant) to allocate the verdict when they have a duty to defend the insured. *See World Harvest Church*, 2013 WL 6843615, at *4.

However, we need not determine which party had the burden to allocate the verdict, because in this case there was nothing to allocate. At trial, Plaintiffs presented the pinkie incident and the hugging incident as part of the sexual relationship. And although Sandra

identified one hospital trip that did not involve molestation in her pretrial deposition, Plaintiff did not present *any* evidence of a non-sexual driving incident to the jury. All of Plaintiffs' claims were based on Aleshire's sexual misconduct, and because Plaintiffs did not attempt to present non-sexual (covered) claims at trial, they cannot recover based on these hypothetical, manufactured-after-the-fact claims. We have read the trial transcript in detail, and there is simply no basis to support Plaintiffs' argument that the jury returned any portion of its verdict for these non-sexual incidents.

To the contrary, the record supports our conclusion that Plaintiffs never presented non-sexual false imprisonment claims. False imprisonment, under Ohio law, "occurs when a person confines another intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short." *Bennett v. Ohio Dep't of Rehab. & Corr.*, 573 N.E.2d 633, 636 (Ohio 1991) (citation and internal quotation marks omitted). The Complaint's statement of facts did not mention Aleshire confining Sandra, and its allegations for false imprisonment did not distinguish between claims for sexual and non-sexual false imprisonment. Plaintiffs' opening statement focused entirely on Aleshire's sexual acts and did not mention any incidents of non-sexual confinement. During trial, Sandra testified to the pinkie and hugging incidents as background to Aleshire's sexual molestation, but she never testified that Aleshire confined her. Instead, she agreed that Aleshire "never held [her] against [her] will or kept [her] from leaving a room or said . . . 'You can't leave my house,' or anything of that nature[.]" R. 61-10, Sandra Testimony at 237, PID 1682. Finally, during closing statements, Plaintiffs did not ask for the jury to hold Aleshire liable for linking pinkies or hugging Sandra; they asked the jury to hold him accountable for sexually molesting her. Considering Plaintiffs sought recovery for Aleshire's sexual acts at trial—acts that Plaintiffs included in their claims for false

imprisonment—we fail to see how Aleshire, his counsel, Defendant, or the jury would have had any idea that Plaintiffs were also presenting non-sexual claims for false imprisonment.

Plaintiffs argument is an after-the-fact attempt to re-characterize background events as separate claims so that they can recover under the Policy. But allocation is only an issue when there are both "covered and non-covered claims." *World Harvest Church*, 2013 WL 6843615, at *4. In this case, there were no covered claims, and Plaintiffs cannot argue that they presented separate, non-sexual claims just because the Policy does not cover the claims they *did* present. We therefore hold that Plaintiffs presented no non-sexual claims for false imprisonment.[2]

### III

This case comes to us under tragic circumstances, and we sympathize with Plaintiffs' desire to be made whole for the harm Lonnie Aleshire Jr. did to their family. But Defendant's insurance Policy does not cover sexual misconduct, and Plaintiffs' claims were entirely based on Aleshire's sexual acts. As such, Sandra and Jacquin cannot recover from Defendant for their claims, and their parents' derivative claims fail. *See Gearing*, 665 N.E.2d at 1120. Because Plaintiffs' claims are not covered, Plaintiffs also cannot recover attorney's fees. Accordingly, and for the foregoing reasons, we AFFIRM summary judgment to Defendant.[3]

---

[2] The Ohio Supreme Court reversed *World Harvest Church* on alternative grounds without addressing allocation. *See World Harvest Church*, 2016 WL 2754889, at *7. We need not address the burden to allocate under Ohio law. *See Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) ("[W]e may affirm on any grounds supported by the record even if different from the reasons of the district court.") (citation omitted).

[3] Plaintiffs briefly argue that the district court erred in terminating the case. The district court denied Defendant's motion for summary judgment in one small part, rejecting Defendant's argument that the jury did not consider Aleshire's non-sexual acts as separate claims for false imprisonment. *See Clifford*, 2015 WL 6119436, at *14, 16. As we agree with Defendant's argument on this point, Plaintiffs' argument fails.