[Cite as *Corcoran v. Bostic*, 2024-Ohio-2019.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| THOMAS J. CORCORAN, | : | |
| Appellee, | : | CASE NO. CA2023-08-053 |
| | : | O P I N I O N |
| - vs - | | 5/28/2024 |
| | : | |
| JUDD BOSTIC, et al., | : | |
| Appellants. | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019 CVH 0996


Jeff Corcoran, for appellee.

Becker & Cade, and Dennis A. Becker and Justin S. Becker, for appellants.



**PIPER, J.**

{¶ 1} This case involves a civil action in the Clermont County Court of Common Pleas between appellant, Judd Bostic, and appellee, Thomas Corcoran. The evidence and testimony were developed before a magistrate revealing the following scenario.

**Factual Background**

{¶ 2} In 2014, Corcoran entered into an oral agreement with Bostic for restoration work on his 1969 Ford Bronco. The parties testified that the scope of the project was

intended to be limited. The original plan was for Bostic to repair the body of the vehicle, repaint it, and essentially make the Bronco roadworthy. However, the project later expanded to a full "restomod" of the Bronco.[1] Corcoran and Bostic also discussed the possibility of entering the Bronco into premier custom car shows.

{¶ 3} The project extended several years and was fraught with disputes. The record shows there was an unsuccessful attempt to have the Bronco completed in time for a car show called the "Cavalcade of Customs" scheduled for January 2015. The deadline for that event passed, and work on the project slowed or ceased for a period of time. In early 2018, there was another attempt to have the Bronco ready for the "SEMA Show" scheduled for November 2018. However, the deadline again passed, and the Bronco remained unfinished.

{¶ 4} Corcoran expressed his frustration with the slow pace of the project. He also began noticing duplicate charges and other billing discrepancies. On December 5, 2018, Corcoran and Bostic entered into a written contract to bring the project to completion. Corcoran agreed to provide Bostic with $5,340.93 for an invoice labeled SO-01609.[2] The parties also agreed that Bostic would be paid $8,000 for his labor in completing the project. Corcoran agreed to pre-pay Bostic $6,000. The remaining $2,000 for labor would be paid upon "completion and final delivery of the vehicle." Corcoran also agreed to pay Bostic a timely completion bonus of $3,000 if the Bronco was completed on or before January 4, 2019.

{¶ 5} The written agreement stated that since some of the parts listed on invoice

---

1. A restomod of a vehicle involves taking an older model vehicle, preserving its classical design, but adding newer amenities.

2. Invoice SO-01609 lists a number of parts and systems, such as the GPS, USB Ports, alternator, serpentine pulley system, exhaust system, etc. At the very bottom is a line item for "LABOR" with a quantity listed as 189.5 hours. No specific information is listed as to how much labor was involved with any particular item.

SO-01609 were estimates, the parties agreed to conduct a final parts reconciliation prior to final delivery. As part of the reconciliation, Bostic agreed to provide Corcoran with receipts for all parts ordered that cost $150 or more. The final reconciliation was to determine the final payment due "at delivery." In pertinent part:

> Prior to final delivery of the vehicle, BOSTIC shall provide to CORCORAN copies of the receipts for all parts ordered by BOSTIC and invoiced to CORCORAN since June 5th, 2018, and which were $150 or greater. A final reconciliation of any monies that may be due CORCORAN, or owing BOSTIC, shall be made and adjusted as part of any final payment at delivery.

After Bostic signed the contract, Corcoran wired him $11,340.93 (the balance of invoice SO-01609 and the $6,000 pre-payment of labor costs).

{¶ 6} It is undisputed that Bostic never completed the project. In addition, Bostic began sending invoices to Corcoran beyond those costs contemplated in the written agreement. In March 2019, Bostic submitted an invoice to Corcoran for $8,656.82 for additional work, which included $7,000 for axles. Corcoran asked for a copy of the receipt for the axles. Bostic replied that he did not have a receipt and indicated that he paid for the axles in cash. Corcoran paid Bostic $3,000; however, their relationship deteriorated and became contentious. Bostic corresponded with Corcoran telling him that he would no longer work on the Bronco. Bostic then claimed that Corcoran owed him $21,141.96 and demanded that Corcoran pay him storage fees. Bostic said he would be keeping the Bronco until he was "paid in full."

{¶ 7} On August 7, 2019, Corcoran brought this lawsuit against Bostic alleging claims for breach of contract, trespass to chattels, conversion, unjust enrichment, and fraudulent misrepresentation. Corcoran alleged that he had spent over $100,000 on the project and that Bostic was wrongfully withholding the Bronco from him. Bostic filed two pro se answers. He later retained counsel and filed an amended answer with a

counterclaim. In his counterclaim, Bostic claimed he had a garageman's lien on the Bronco and sought to foreclose on the lien.

{¶ 8} The matter proceeded to trial before a magistrate in September of 2021. Following the close of evidence, Bostic sought a Civ.R. 41(B) dismissal of Corcoran's complaint arguing that Corcoran did not establish his ownership of the Bronco in accordance with R.C. 4505.04. Essentially, Bostic argued that Corcoran was required to prove ownership by certificate of title, admission in the pleadings, or stipulation. Bostic denied admitting to Corcoran's ownership through stipulation or admission in the pleadings. Therefore, because Corcoran did not introduce the certificate of title into evidence, Bostic argued Corcoran's complaint should be dismissed.

**Decision of Magistrate and Trial Court Upon Review**

{¶ 9} The magistrate found that Bostic "failed to perform his end of the bargain by completing the work." However, the magistrate also found that Bostic had added value to the Bronco and was entitled to a garageman's lien. The magistrate then considered Bostic's motion to dismiss. The magistrate accepted Bostic's argument that the circumstances required Cororan produce an actual certificate of title to establish his ownership interest in the Bronco. Therefore, in ruling on Bostic's motion to dismiss, the magistrate concluded that Bostic "has an artisan's lien for his work on the Bronco that predates and is superior to any undocumented claim of ownership by Corcoran." As a result, the magistrate granted Bostic's Civ.R. 41(B) motion to dismiss Corcoran's claims related to the Bronco and ordered that Bostic retain the Bronco.

{¶ 10} Corcoran timely filed objections with the trial court. Upon an independent review of the evidence and testimony the trial court rejected the magistrate's decision. The trial court concluded that Corcoran was, in fact, the owner of the Bronco. The trial court noted that Corcoran testified about registering the vehicle in Ohio, he just could not

remember "when" he registered the vehicle.[3]

{¶ 11} The trial court also found that Bostic did not have a garageman's lien on the Bronco after considering the parties' written agreement. According to the agreement, Corcoran had already paid Bostic the money due and owing. Corcoran was not obligated to provide Bostic with additional funds *until* the project was completed. Upon the vehicle's completion, Bostic would have been entitled the remaining $2,000 in labor charges (and the completion bonus if completed timely) along with any amounts owed following the final parts reconciliation. The trial court also noted that Bostic failed to provide Corcoran with a receipt, which was contrary to the terms of the written agreement.

{¶ 12} The trial court concluded that Corcoran was the registered and titled owner of the Bronco and Bostic had no rightful claim to retain its possession. Since Bostic did not have a garageman's lien, R.C. 4505.04 was inapplicable. Accordingly, Bostic's motion to dismiss was denied. The trial court ordered, inter alia, that the Bronco and all parts incorporated into the Bronco be returned to Corcoran. The trial court noted, incorrectly, that since the axles were not on the vehicle that the axles should be returned to Bostic.

{¶ 13} Bostic filed a notice of appeal. However, during the pendency of the appeal, Bostic filed a Civ.R. 60(B) motion for relief from judgment. Bostic made various claims in his motion for relief from judgment, including that the trial court was mistaken in its decision that the axles had not been incorporated into the Bronco. This court remanded the matter to the trial court to consider Bostic's motion.

{¶ 14} In a subsequent entry, the trial court acknowledged it had been mistaken about the axles and modified its judgment accordingly. The trial court stated it would "not

---

3. As will be discussed in addressing Bostic's second assignment of error, it was undisputed Corcoran contracted with Bostic to have Corcoran's 1969 Ford Bronco rebuilt and restored by Bostic.

be equitable for this Court to allow Mr. Corcoran to benefit from the axles without paying for them." Therefore, the trial court found that Corcoran owed Bostic $5,684.82 for the axles.[4] Upon payment of that sum, Corcoran would be entitled to the return of the Bronco and all the attached parts. The ruling did not alter the trial court's conclusions that (1) Bostic did not have a garageman's lien on the Bronco, and (2) R.C. 4505.04 was inapplicable. Bostic then appealed from the trial court's modified entry.[5] We now consider Bostic's timely appeal, raising two assignment of error for review.

**Appeal**

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN SUSTAINING CORCORAN'S OBJECTIONS TO THE MAGISTRATE FINDING THERE WAS A GARAGEMAN'S LIEN AND INSTEAD FINDING THAT JUDD BOSTIC DOES NOT HAVE A VALID GARAGEMAN'S LIEN ON THE 1969 FORD BRONCO AND ALL OF THE ATTACHED PARTS.

{¶ 17} In his first assignment of error, Bostic argues the trial court erred by finding he did not have a valid garageman's lien on the Bronco. He further argues he should be entitled "reasonable daily storage charges" of the Bronco. In so doing, Bostic does not present any argument concerning the validity of the written contract. He agrees that the parties entered into a "written agreement to finish the project." Nevertheless, Bostic argues that he was entitled to a garageman's lien because he affixed axles on the Bronco. He maintains that a garageman's lien arises any time work has been performed that has

---

4. The trial court arrived at this figure by subtracting the $3,000 that Corcoran paid Bostic after being presented with the March 2019 invoice. We note the calculation is off by a de minimis amount.

5. Corcoran did not file an appeal.

not been paid for.[6]

**Applicable Law**

{¶ 18} We will review the trial court's decision applying a manifest weight standard of review. *Investor Support Servs., L.L.C. v. Dawoud*, 12th Dist. Warren No. CA2020-09-060, 2021-Ohio-2293, ¶ 22. This is the standard of review that this court typically applies when reviewing civil appeals from bench trials. *See Total Quality Logistics, L.L.C. v. Alliance Shippers, Inc.*, 12th Dist. Clermont No. CA2020-06-031, 2021-Ohio-781, ¶ 77 ("[t]ypically, when reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review").

{¶ 19} It is well established that a mechanic who receives a motor vehicle from a consumer for the purpose of repairing it has a common law lien on the vehicle for the reasonable value of the labor and materials. *Leesburg Fed. Savs. Bank v. McMurray*, 12th Dist. Fayette No. CA2012-02-002, 2012-Ohio-5435, ¶ 10; *Marreez v. Jim Collins Auto Body, Inc.*, 1st Dist. Hamilton No. C-210192, 2021-Ohio-4075, ¶ 9. While the General Assembly codified most artisan's liens in R.C. 1333.41(E), that statute specifically excludes motor vehicles, which remain governed by the common law. *Leesburg Fed.* at ¶ 10. "Thus, a mechanic in Ohio whose labor and skill impart additional value and improvement to an automobile has a common law lien upon the automobile until his reasonable charges are paid * * * [and] may lawfully retain possession of the automobile until those charges are paid." *Mareez* at ¶ 9.

**Analysis**

{¶ 20} In the present case, the trial court found that Bostic did not have a garageman's lien on the Bronco because Corcoran and Bostic entered into a written

---

6. Bostic does not address the trial court's award to him for the axles in the amount of $5,684.82.

agreement setting the terms for the completion of the project. Consistent with that agreement, Corcoran had already provided Bostic with the $11,340.93 owed for invoice SO-01609 and the $6,000 pre-payment of most labor costs. It was undisputed that Bostic did not complete the Bronco. The trial court therefore found that Bostic was not entitled to additional money because:

> (1) the contract provided that payment for any additional parts, including the axles, evidenced by a parts reconciliation statement, was not due until the vehicle was completed and (2) no receipt was provided in accordance with the contract. As a result of all work having been paid for * * * the defendants were not entitled to a garageman's/artisan's lien as the plaintiff was in full compliance with their written contract and all parts and services were paid up to that point.

{¶ 21} On appeal, Bostic argues "[i]t is without doubt that Bostic possesses a valid garageman's lien" and the trial court's reasoning "flies in the face of all case law and common sense." However, we find Bostic's argument to be without merit. "In Ohio, parties 'have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced.'" *Total Quality Logistics, L.L.C. v. JK & R Express, L.L.C.*, 164 Ohio St.3d 495, 2020-Ohio-6816, ¶ 16, quoting *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36 (1987). *See Paul Cheatham I.R.A. v. Huntington Natl. Bank*, 157 Ohio St.3d 358, 2019-Ohio-3342, ¶ 30 ("Parties to a contract may include terms in derogation of common law"). "Parties to contracts are presumed to have read and understood them and * * * a signatory is bound by a contract that he or she willingly signed." *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, ¶ 10.

{¶ 22} In the present case, Bostic agreed to the terms of the written contract and therefore was bound by the agreement he signed. Bostic agreed that the labor necessary to complete the project was $8,000 and agreed to receive $6,000 upfront with $2,000 due

upon completion. Bostic also agreed that additional money for parts was due after the final reconciliation "at delivery," and if the part was $150 or greater, Bostic agreed to provide the receipt. The trial court appropriately found that Corcoran met his obligations consistent with the written agreement while Bostic did not. Because Bostic neither provided Corcoran a receipt for the axles, nor completed the project, as contemplated by the written agreement, the trial court stated that Bostic's garageman's lien "was *premature*, and will never become *mature* as a result of the lawsuit having been filed before completion." (Emphasis added.)

{¶ 23} We note Bostic takes particular issue with the terms "premature" and "mature" when discussing his purported garageman's lien and the filing of Corcoran's lawsuit. Bostic suggests the trial court's decision creates a scenario in which a party could simply file a lawsuit to prevent a garageman's lien from ever "maturing." However, the trial court's reasoning with regard to the lien being "premature" and not "mature" is better understood if considered in context of the particular circumstances.

{¶ 24} Here, the parties had a written contract in contemplation of bringing the project to completion. Despite the contract, Bostic failed to complete the project and was "done" with completing the project. Bostic demanded additional money and informed Corcoran that he would not give him the Bronco back until he was "paid in full." Bostic's demand ballooned to $21,141.96. It was clear from the record below that this deviation from the contract was untenable for Corcoran, which resulted in the instant litigation. Thus, the trial court's statement about the lien being "premature" and noting that the lien would "never" become mature was based upon the particular facts and circumstances of this case. The simple filing of a lawsuit itself would not have prevented a garageman's lien if it were valid. However, in this case, it was not. The trial court's reasoning does not amount to error, much less reversible error.

**{¶ 25}** Although the trial court did not find that Bostic had a garageman's lien, it decided, as a matter of equity, that Corcoran should pay Bostic $5,684.82 in related costs for the axles. The trial court stated "[i]t would not be equitable for this Court to allow Mr. Corcoran to benefit from the axles without paying for them." Corcoran could have chosen to appeal the trial court's decision with regard to the award in equity, but he did not do so. *Jordan v. Jordan*, 5th Dist. Delaware No. 15 CAF 08 038, 2015-Ohio-4261, ¶ 12 ("Failure to file a timely appeal of a final, appealable order constitutes a waiver of the right to appeal any errors contained within the order"). Since Corcoran did not appeal that decision, we need not decide whether the equitable award to Bostic was appropriately awarded.

**{¶ 26}** While Bostic argues differently, we find the trial court did not err by sustaining Corcoran's objections and finding that Bostic did not have a garageman's lien on the Bronco. As a result, we find the trial court's decision was supported by the weight of the evidence. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21.

**{¶ 27}** Finally, Bostic makes a summary argument at the end of his first assignment of error, without any legal citation, that he should be able to assert a garageman's lien for daily storage charges for the Bronco. However, as this court has previously stated, storage of a vehicle does not give rise to a garageman's lien. *Leesburg Fed.*, 2012-Ohio-5435 at ¶ 13. Additionally, Corcoran did not agree to pay Bostic storage costs and the record, in fact, shows that Bostic has continued to retain the Bronco against Corcoran's wishes. Bostic's first assignment of error is overruled.

**{¶ 28}** Assignment of Error No. 2:

**{¶ 29}** THE TRIAL COURT ERRED IN SUSTAINING CORCORAN'S OBJECTIONS TO THE MAGISTRATE FINDING THAT OWNERSHIP HAD NOT BEEN PROVEN AND INSTEAD FINDING THAT OWNERSHIP WAS ADEQUATELY PROVEN,

R.C. 4505.04 IS NOT APPLICABLE, AND PLAINTIFF WAS NOT REQUIRED TO PROVE OWNERSHIP THROUGH A CERTIFICATE OF TITLE.

{¶ 30} In his second assignment of error, Bostic argues that Corcoran failed to prove ownership of the Bronco. Bostic bases his argument on R.C. 4505.04(B), but his argument is premised on the assumption that he holds a valid lien on the Bronco. In pertinent part, R.C. 4505.04(B) states:

> (B) * * * [N]o court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
>
> (1) By a certificate of title, an assignment of a certificate of title made under section 4505.032 of the Revised Code, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the Revised Code;
>
> (2) By admission in the pleadings or stipulation of the parties;
>
> * * *

{¶ 31} Since the assumption Bostic relies upon is invalid, his argument is without merit. There is ample case law that R.C. 4505.04 applies only to litigation "where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations." *Bridge v. Midas Auto Experts #322*, 8th Dist. Cuyahoga No. 94115, 2010-Ohio-4681, ¶ 9. That statute's purpose terminates when the defense is not based upon some claimed right, title, or interest in the same automobile. *Rucker v. Alston*, 2d Dist. Montgomery No. 19959, 2004-Ohio-2428, ¶ 9; *Paldino v. Champion Quick Lube Plus*, 11th Dist. Trumbull No. 2011-T-0114, 2012-Ohio-4008, ¶ 20.

{¶ 32} In the case judice, Corcoran and Bostic were not rival claimants to the

Bronco and R.C. 4505.04 was clearly inapplicable. Bostic did not claim to own the Bronco. Bostic admitted as much in his counterclaim stating that "Judd Bostic * * * performed services for Plaintiff and at his direction in the rebuild and restoration of *Plaintiff's* 1969 Ford Bronco * * *." (Emphasis added.) As noted by the trial court, at most, this was a dispute between a vehicle owner and a potential lien claimant. However, as stated above, Bostic did not have a valid garageman's lien on the Bronco.

{¶ 33} In summary, Bostic had no legal right to Corcoran's Bronco and the trial court was correct in determining that R.C. 4505.04 did not apply in this case. Accordingly, we find the trial court appropriately denied Bostic's arguments under R.C. 4505.04 that Corcoran failed to establish his ownership in the Bronco, or his right to possession. *See Paldino v. Champion Quick Lube Plus*, 11th Dist. Trumbull No. 2011-T-0114, 2012-Ohio-4008, ¶ 27. Bostic's second assignment of error is overruled.

{¶ 34} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.