[Cite as *Shafer Industrial Servs., Inc. v. A & M Towing & Road Serv., Inc.*, 2025-Ohio-3197.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| SHAFER INDUSTRIAL SERVICES, INC., | CASE NO. 2025-T-0002 |
| Plaintiff-Appellee, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| A AND M TOWING AND ROAD SERVICE, INC., | Trial Court No. 2022 CV 01405 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: September 8, 2025
Judgment: Affirmed in part, reversed in part and remanded

*Michael J. O'Shea*, Lipson O'Shea Legal Group, Hoyt Block Building, Suite 110, 700 West St. Clair Avenue, Cleveland, OH 44113, *Robert V. Housel*, Robert V. Housel Co., L.P.A., 23240 Chagrin Boulevard, Suite 101, Beachwood, OH 44122, *Thomas G. Carey*, Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481, and *Paul W. Flowers* and *Kendra N. Davitt*, Flowers & Grube, 50 Public Square, Terminal Tower, 40th Floor, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Adam V. Buente*, The Law Office of Adam V. Buente, L.L.C., 7 Court Street, Suite 105, Canfield, OH 44406 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, A and M Towing and Road Service, Inc. ("A&M Towing"), appeals the judgment of the Trumbull County Court of Common Pleas in favor of plaintiff-appellee, Shafer Industrial Services, Inc. ("Shafer Industrial"). For the following reasons, we reverse in part the decision of the court below with respect to certain damages which were not reasonably mitigated and with respect to its evidentiary ruling

under Evid.R. 408 and remand for further proceedings. The remainder of the decision is affirmed.

{¶2} On October 5, 2022, Shafer Industrial filed a complaint against A&M Towing for replevin of a 1995 Mack truck and breach of contract.

{¶3} On December 7, 2022, Shafer retrieved the Mack truck from A&M Towing by agreement of the parties.

{¶4} On January 5, 2023, A&M Towing answered and counterclaimed for breach of contract and unjust enrichment.

{¶5} The matter was tried before a magistrate on April 10, 2024.

{¶6} On October 18, 2024, the magistrate issued her decision, making the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1.    Shafer is an industrial cleaning business, handling environmental issues, spills, and transfer of liquids and other materials. Nancy Shafer is the President of Shafer and manages the day-to-day operations, including payment of bills. Nancy's son, Gregg Shafer, is the Vice-President and primarily works in the field, working with the crews and hand[l]ling the maintenance of Shafer's trucks. Both Nancy and Gregg testified at trial.

2.    A&M Towing is a heavy-duty truck repair shop, handling repairs, as well as towing. Nick LaNeve is the owner of A&M and testified at trial.

…

4.    In January 2021, one of Shafer's trucks, a 1995 Mack Truck ("the Truck"), was having clutch issues. The Truck was located on-site with one of Shafer's customers. Gregg contacted A&M to come out and service the Truck.

5.    On January 12, 2021, A&M performed a service call on the Truck and determined that the Truck needed a new clutch, PTOs, and a new hydraulic pump. A&M towed the vehicle to its shop for repairs.

Case No. 2025-T-0002

6.      On January 13, 2021, A&M prepared an estimate for the work needed to be done in the amount of $21,157.58.  A&M required a $15,000.00 deposit prior to beginning repairs.  Shafer accepted the estimate.    A&M then generated Repair Order #517 totaling $22,138.87.  The January 13, 2021 estimate and repair order are the only ~~two~~ writings reflecting the terms of the repair work for the Truck.

…

9.      Shafer tendered the $15,000.00 deposit to A&M in April 2021.

10.      To fulfill its contractual obligations to a customer, Shafer began renting a replacement truck in May 2021 for $6,938.75 per month.

11.      There were delays in receiving the correct pump for the Truck. A&M ultimately received the correct pump in June 2021.   A&M tendered $16,143.60 to Sam Winer Motors for the pump: $15,000.00 on April 21, 2021 and $1,143.60 on June 1, 2021.

12.      On July 15, 2021, A&M performed a service call for Shafer on a different truck.  The invoice for this service call totaled $1,935.43. This truck was not taken to A&M's shop.

13.      On September 13, 2021, A&M performed another service call for Shafer on a different truck.  This invoice totaled $441.62.  This truck was also not taken to A&M's shop.

14.      Nancy, as the person at Shafer responsible for payment of bills, received the invoices for the July and September 2021 service calls unrelated to the Truck and withheld payment on both invoices as she did not know the status of the repairs on the Truck.

15.      There is a lack of documented evidence as to any conversations between Gregg Shafer and LaNeve between June 2021 and October 2021 and differing accounts as to what any verbal conversations included or detailed.

16.      Gregg testified that he had attempted to call A&M multiple times to check on the status of the Truck but was told he had to speak with LaNeve and never heard back from him.

17.      Gregg testified that he did speak with LeNeve sometime before August 2021, but after June when A&M received the pump, and told him Shafer needed the truck fixed and returned because the

Case No. 2025-T-0002

rental truck was becoming too expensive. Gregg could not recall what LaNeve's response was.

18. LaNeve testified that A&M stopped working on the Truck because Shafer "had balances due." He further testified that "any client of ours who doesn't pay their invoices in a timely fashion goes on COD. We explained that to 'em. And we stopped doing work because they were - - had past due invoices." He also testified that "[t]he balance due on the two previous invoices put their account on hold." However, LaNeve also testified that he told the Shafers that they could pay the remaining balance owed for the Truck and pick up the Truck without the repairs being complete.

19. A&M asserts that the deficiency balance owed for the Truck under Repair Order #517 is $6,233.87 – the total amount on the Repair Order of $22,183.87 minus the $15,000.00 deposit minus the $950.00 in labor for installing the pump as that was not completed.

20. Nancy testified that she understood that the $15,000.00 was only a deposit and that Shafer would owe more when the repairs were complete and was willing to pay that further amount. However, she testified that Shafer never received an invoice or other demand for any deficiency balance owed regarding the repairs on the Truck.

21. Gregg testified that he was unaware of any balance owed for the Truck.

22. On October 14, 2021, Shafer's counsel sent A&M a letter inquiring into the status of the repairs on the Truck and demanding verification that the Truck would be repaired and available to pick up on October 20, 2021. The letter also informed A&M of the costs Shafer had expended on a rental truck. A&M did not respond to the letter and instead hired its own counsel.

23. A&M had no further contact with Shafer after this point. Shafer filed this action almost one year later on October 5, 2022. There is no evidence before this Court as to what transpired after A&M retained counsel in October 2021 up to the filing of this lawsuit.

24. At trial, A&M's counsel sought to question Nancy regarding whether an offer to settle and pick up the Truck was ever presented to her from her counsel. Shafer's counsel objected to this line of questioning and a corresponding document pursuant to Evid.R. 408. The document was not put forth for admission as evidence. The Court took the objection under advisement and asked counsel to brief the issue in their post-trial filings. Neither did. Upon review, the

Court finds that Shafer's objection is well-taken and any such offer is inadmissible pursuant to Evid.R. 408. Regardless, even if admissible, Nancy was not able to testify with any certainty as to whether or not she had known about such an offer.

25.     The Court, having viewed and evaluated the testimony at trial in its entirety, finds Gregg and Nancy Shafer credible and finds that they did not know about the deficiency balance owed on the repair order for the Truck or that the Truck would not be returned until the two unrelated invoices and the deficiency balance were paid in full. Whereas both Nancy and Gregg were steadfast that they did not know about the deficiency balance, LaNeve's testimony on cross examination was incredibly uncooperative and vague as to his communications with Shafer as to why he was not completing the repairs on the Truck or returning it or that he ever demanded payment of the deficiency balance. LaNeve's uncooperative behavior and his vague testimony go toward the Court's determination of his credibility and establishes that he was being evasive regarding the facts of the matter, specifically about the deficiency balance and ever demanding such a balance from Shafer.

26.     Based on the testimony and evidence admitted, the Court further finds that A&M stopped work on the Truck and refused to return it in large part because of the two unpaid invoices for the unrelated service calls, not the deficiency balance or outstanding amount owed under Repair Order #517 for the Truck. Given LaNeve's testimony of A&M's policy regarding unpaid balances and the timing of when the pump was received in June 2021, A&M would not have performed the service calls in July and September 2021 if all work for Shafer was halted due to an outstanding balance owed for the Truck.

27.     Upon retrieving the Truck after the December 7, 2022 Agreed Judgment Entry, Shafer discovered that the tires on the Truck were deflated and dry-rotted and the Truck had sustained other damages due to sitting for so long. Shafer received an estimate from Warren Truck Repair, Inc. on January 31, 2023 that it would cost $8,501.77 to repair these damages.

…

29.     In or around November 2023, nearly a year after Shafer retrieved the Truck, Warren Truck Repair attempted to install the pump that A&M provided. Shafer asserts that Warren Truck was unable to do so because A&M had obtained the wrong pump. LaNeve testified that the pump was correct, it was Warren Truck's

installation of the pump that rendered it inoperable. LaNeve testified that he provided instructions with the pump on how to install it and the instructions were not followed. Shafer ordered and obtained a new pump and the Truck was repaired by Warren Truck Repair. No one from Warren Truck Repair testified at trial.

30.     Shafer continued to rent the replacement truck for $6,938.75 per month until March 2023 when the contract with the customer ended.

**PLAINTIFF'S BREACH OF CONTRACT CLAIM**

…

2.     Repair Order #517 was a contract between Shafer and A&M for the repair of the Truck. The parties do not dispute this.

3.     Shafer performed under the contract by tendering the required $15,000.00 deposit in April 2021.

4.     A&M breached the contract by refusing to complete the repairs. The contract only required Shafer to pay the $15,000.00 deposit. It did not require that any outstanding balance above the deposit be tendered before the work was complete. Further, the Court finds that Shafer was not invoiced for or otherwise notified of that balance. Lastly, the Court finds that A&M ceased work on the Truck as a result of the unpaid invoices that were unrelated to the Truck.

…

6.     Upon review of the evidence and testimony, the Court finds that A&M did not have a garagekeeper's lien on the Truck and, therefore, breached the contract by retaining possession. A&M did not demand payment from Shafer for any work done to the Truck that went beyond the $15,000.00 deposit, and Shafer did not know that any outstanding or deficiency balance was required prior to the completion of the agreed upon repairs. Further, as previously found, A&M was retaining possession of the Truck largely because of the two unpaid invoices for the July and September 2021 service calls. A&M may not assert a lien as to the Truck for repairs it made to unrelated vehicles.

…

8.     Had A&M not breached the contract by refusing to repair and return the Truck, Shafer would not have had to continue to pay for a

Case No. 2025-T-0002

replacement truck to fulfill its obligations to a customer. The Court notes that A&M did not provide any evidence or argument that the monthly rental rate that Shafer paid was unreasonable. Therefore, Shafer is entitled to recover the cost of the rental truck at $6,938.75 per month from November 2021, the first month after Shafer provided a written demand for the completion of the repair work or the return of the truck, through November 2022, the last month Shafer paid for a rental truck before the Court entered the December 7, 2022 Agreed Judgment Entry giving Shafer possession of the Truck. The total amount of this award being $90,203.75.

…

12. The Court finds that A&M has failed to meet its burden to demonstrate that Shafer failed in its duty to mitigate damages. Defendant only asserts that Plaintiff could have simply tendered payment of the two outstanding invoices for the unrelated service calls and the unpaid balance for the Truck and it would have avoided paying for the replacement truck. However, first, A&M has failed to establish that Shafer knew that the Truck was being held because of the unpaid balances. Further, A&M has failed to establish that it ever demanded payment on the repair order above the $15,000.00 deposit or that it ever communicated to Shafer that it was not completing the repair order. Without knowledge of why A&M was refusing to repair or return the Truck, the Court finds that Shafer would have been subject to undue risk and expense had it stopped paying for the rental truck as it was necessary to fulfill Shafer's obligations to a customer.

13. Shafer also seeks damages in the amount of $8,501.77, pursuant to the January 2023 estimate from Warren Truck Repair, for the deteriorated condition of the Truck upon its retrieval from A&M. Upon review of the evidence, the Court finds that, had the contract not been breached and the Truck was repaired and returned, or at least returned without the pump installed in October 2021, the condition of the Truck would not have deteriorated as such. Shafer is entitled to recover $8,501.77 for the wear and tear to the Truck while it was retained by A&M for approximately one year.
…

**DEFENDANT'S COUNTERCLAIM FOR BREACH OF CONTRACT**

19. A&M asserts that Shafer first breached the contract by failing to tender the outstanding balance on Repair Order #517. However, as stated above, the Court finds that A&M breached the contract, Repair Order #517. As such, A&M's claim for breach of contract fails.

…

21.    A&M also asserts a claim for breach of contract for two unpaid invoices from July and September 2021, totaling $2,377.05. Shafer did not present any evidence or argument that it does not have to tender payment for these invoices. As such, the Court finds that A&M performed repairs for Shafer as agreed for two unrelated vehicles, A&M sent invoices to Shafer for these repairs, and Shafer failed to pay the amounts. A&M is entitled to recover the $2,377.05 for the two unpaid invoices, unrelated to the Truck.

…

24.    Based on the foregoing, the Court finds in favor of Plaintiff and against Defendant on Plaintiff's claims for breach of contract and replevin and Defendant's counterclaim for unjust enrichment. The Court finds in favor of Defendant and against Plaintiff on Defendant's … breach of contract counterclaim with regard to the July 2021 and September 2021 invoices only.

{¶7} A&M Towing filed objections to the magistrate's decision which the trial court overruled on December 27, 2024.

{¶8} On January 24, 2025, A&M Towing filed a notice of appeal. On appeal it raises the following assignments of error:

[1.] The Trial Court prejudicially erred when it ruled that A&M Towing did not have a valid lien over the vehicle in question.

[2.] The Trial Court prejudicially erred when it failed to find that Shafer failed to mitigate its damages.

[3.] The Trial Court prejudicially erred when it failed to find that Appellee had notice of A&M Towing's offer.

### A&M Towing did not possess a valid lien on Shafer Industrial's truck

{¶9} In the first assignment of error, A&M Towing argues that the trial court's finding that A&M Towing did not possess a valid lien on Shafer Industrial's truck is against the manifest weight of the evidence and legally in error.

{¶10} "[A] court of appeals has the authority to reverse a judgment as being

Case No. 2025-T-0002

against the weight of the evidence." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 7. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." (Citation omitted.) *Id.* Nonetheless, "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

{¶11} To the extent that A&M Towing's assignment of error raises a question of law, this court reviews the issue de novo. *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 2018-Ohio-1590, ¶ 23.

{¶12} "An artisan, who furnishes materials or performs labor for the repair of chattel property, has a common-law lien upon such chattel property for the reasonable value of such labor and materials." *Cleveland Auto Top & Trimming Co. v. Am. Fin. Co.*, 124 Ohio St. 169 (1931), syllabus. "For this type of common law garageman's lien to arise, the service the mechanic performs 'must be to maintain or enhance the value of the personal property.'" (Citation omitted.) *Marreez v. Jim Collins Auto Body, Inc.*, 2021-Ohio-4075, ¶ 9 (1st Dist.). "Thus, a mechanic in Ohio 'whose labor and skill impart

Case No. 2025-T-0002

additional value and improvement to an automobile has a common law lien upon the automobile until his reasonable charges are paid … [and] may lawfully retain possession of the automobile until those charges are paid.'" (Citation omitted.) *Id.*

{¶13}   A&M Towing argues that the trial court erred as a matter of law by requiring it to submit a demand for payment before it acquired a valid lien when the law requires no such demand.  *See* magistrate's decision, plaintiff's breach of contract claim, at ¶ 6 ("A&M did not demand payment from Shafer for any work done to the Truck that went beyond the $15,000.00 deposit, and Shafer did not know that any outstanding or deficiency balance was required prior to the completion of the agreed upon repairs").  A&M Towing further argues that Shafer Industrial had actual notice of the amount owed by virtue of Repair Order #517: "The evidence in the record is thus unequivocally clear that Shafer possessed an estimate in excess of $22,000 in April of 2021.  Basic arithmetic dictates that $22,000 minus the $15,000 deposit … provides an approximate $7,000 difference.  Shafer thus was not only on actual notice, but knew the exact amount owed." Appellant's merit brief at 20.  We disagree with both contentions.

{¶14} The   trial   court   did   not   impose   a   notice   requirement   on   the common law regarding  garageman's liens.   Rather,  the court's  emphasis  on  notice derives from the facts of this present case.  The fundamental reason A&M Towing did not acquire a lien over Shafer Industrial's truck is because it breached its agreement to repair the truck as reflected in Repair Order #517.  This document required A&M Towing not only to purchase a hydraulic pump but also to install it.  A&M Towing never fulfilled its obligations under the contract and, therefore, never acquired a lien on the truck.  If A&M Towing intended to repudiate its obligations under the contract or otherwise modify the

terms of the agreement it certainly needed to communicate its intentions to Shafer Industrial. Instead, A&M Towing ceased work on the truck before the repairs were complete and refused to surrender it until it was paid for the work actually completed. In light of the poor communication between the parties, it was A&M Towing's responsibility to make Shafer Industrial aware of what work had been completed, what work had not been completed, and what the outstanding balance was before a proper garageman's lien could arise. As will be discussed below, Shafer Industrial was eventually put on notice of A&M Towing's partial performance. While A&M Towing's belated communication (made once parties had retained counsel) was insufficient to create a lien, it is relevant to the reasonableness of Shafer Industrial's mitigation of damages resulting from the breach of contract as discussed under the second assignment of error.

{¶15} We find the case of *Corcoran v. Bostic*, 2024-Ohio-2019 (12th Dist.), to be instructive. In *Corcoran*, the parties entered into an agreement for restoration work on a vehicle. The plaintiff was required to pay a certain amount up front with the balance being due upon completion. The parties' relationship deteriorated and the work was never completed. The defendant refused to release the vehicle until he was paid the balance owed. The court of appeals affirmed that no lien existed entitling the defendant to retain possession of the vehicle. "The trial court appropriately found that Corcoran [plaintiff] met his obligations consistent with the written agreement while Bostic [defendant] did not. Because Bostic neither provided Corcoran a receipt for the axles, nor completed the project, as contemplated by the written agreement, the trial court stated that Bostic's garageman's lien 'was *premature*, and will never become *mature* as a result of the lawsuit having been filed before completion.'" *Id.* at ¶ 22.

Case No. 2025-T-0002

{¶16} Similarly in the present case, Repair Order #517 detailed repair work (including parts and labor) in the amount of $22,183.87 and provided "15,000 deposit required on estimate to begin repairs." Shafer Industrial duly paid the deposit. A&M Towing began but did not complete the repairs.[1] Although the parties' agreement in the present case did not expressly agree as to when the balance would become due, the reasonable interpretation of their agreement would be that the balance would be due upon completion of the repairs. 17A American Jurisprudence 2d, Contracts, Section 470 (2025) ("the law will deem the amount due and payable when the party has fully performed his or her obligations under the contract and nothing remains to be done but payment to him or her of the amount due"); Annotation, *When payment is due under contract to render services silent as to time of payment*, 2 A.L.R. 522 (1919) ("[i]t may be stated as a general rule that, where a contract to render services is silent as to the time of payment, payment is due when the services have been rendered"). Since the contract was not fully performed and Shafer Industrial was not timely informed of the current status of the repair work, A&M Towing was not entitled to retain possession of the truck.

{¶17} The first assignment of error is without merit.

### Shafer Industrial failed to reasonably mitigate its damages

{¶18} In the second assignment of error, A&M Towing argues that the trial court erred as a matter of law by imposing the burden of proof regarding mitigation of damages on it and that, regardless of whether A&M Towing had the burden of proof, it demonstrated

---

1. Although it is not material to the analysis, we note that the record is unclear as to why A&M Towing failed to install the hydraulic pump. The record indicates that A&M Towing claimed to have the correct pump (although it is disputed if it was, in fact, the correct pump) by June 2021, but had not installed it by October. A&M Towing performed repair work for Shafer Industrial in July and September for which it was not paid. While this might explain (as the magistrate found) why A&M Towing retained possession of the truck in October, it does not explain why A&M Towing would cease work in June.

Case No. 2025-T-0002

Shafer Industrial's failure to mitigate as a factual matter. Our standard of review is the same as under the first assignment of error, i.e., manifest weight as to factual matters and de novo as to questions of law.

{¶19} "The general rule is that an injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided." *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 276 (1999). "However, the obligation to mitigate does not require the party to incur extraordinary expense and risk." *Id.* The Supreme Court of Ohio has stated, and reiterated, that the duty to mitigate damages is in the nature of an affirmative defense and that the burden of proof rests with the party raising the claim. *State ex rel. Martin v. Bexley City School Dist. Bd. of Edn.*, 39 Ohio St.3d 36, 38 (1988); *Young v. Frank's Nursery & Crafts, Inc.*, 58 Ohio St.3d 242, 244 (1991); *State ex rel. Martin v. Columbus*, 58 Ohio St.2d 261, 265 (1979) ("the principle of mitigation of damages is an affirmative defense" and "[p]lacing the burden of proof on the wrongdoer on this issue has also been considered the majority rule and espoused by an 'overwhelming weight of authority'").

{¶20} In the present case, Shafer Industrial leased a truck to fulfill its contractual obligations to other parties while its truck remained in A&M Towing's possession. A&M Towing asserts that leasing a truck for $6,938.75 per month was not reasonable given that it only owed A&M Towing approximately $7,000 and that it waited a full year to file its replevin action after demanding return of the truck. We agree.

{¶21} Even in the absence of a proper lien, Shafer Industrial's conduct demonstrates, under the circumstances of the present case, the unreasonableness of the truck rental over such a prolonged period of time. We note, initially, that, while A&M

Case No. 2025-T-0002

Towing appears to have withheld the return of the truck to secure payment of the remaining or deficiency balance under Repair Order #517, Shafer Industrial admitted that it withheld payment for repair work completed in July and September 2021 to secure the repair and/or return of the truck. In the present situation, then, both parties were refusing to perform contractual obligations in order to leverage performance from the other party of their contractual obligations.

{¶22} Next, the evidence does not support the magistrate's finding that Shafer Industrial "did not know about the deficiency balance owed on the repair order for the Truck or that the Truck would not be returned until the two unrelated invoices and the deficiency balance were paid in full." It is clear from the record that Shafer Industrial must have known that the $15,000 paid in May 2022 did not cover the full cost of the truck repair, even deducting the $950 in labor for installation of the pump, because the estimate in the repair order exceeded $15,000. As noted by the magistrate, the estimate contained an advisement that "[a]n express garagekeeper's lien is hereby acknowledged on [the truck] to secure the amount [of] repairs thereto." Conversely, A&M Towing was aware that it had not been paid for the repair work in July and September (that was the point of Shafer Industrial withholding payment in the first place). See Magistrate's Decision ("A&M was retaining possession of the Truck largely because of the two unpaid invoices for the July and September 2021 service calls"). In October 2021, it was communicated to counsel for Shafer Industrial that A&M Towing would return the truck if the balance were paid. Although Nancy was equivocal as to whether she was aware of the offer (see below), for present purposes the fact of the offer is established inasmuch as "[t]he knowledge and behavior of an attorney is imputed to his or her client." *Ciganik v. Kaley*,

2004-Ohio-6029, ¶ 25 (11th Dist.). Shafer Industrial's protestations of ignorance, whether willful or otherwise, are unavailing. From October 2021 at the latest until suit was filed in October 2022, Shafer Industrial knew enough to either pay the outstanding balance or initiate legal action. There is no explanation for the delay in initiating the replevin action. Finally, although Shafer Industrial regained possession of the truck in December 2022 and obtained a repair estimate in January 2023, the truck was not repaired before the contract for which the truck was necessary expired in March 2023. The truck was not actually repaired until November 2023. Contrary to the lower court, we find that A&M Towing met its burden to demonstrate that Shafer Industrial failed to mitigate its damages.

{¶23} The outcome on the issue of mitigation turns on the relative credibility of the witnesses less than suggested by the dissent. Until October 2021, it is established that LaNeve had not communicated to the Shafers that he was retaining the truck pending the payment of the deficiency balance. In October, this was communicated to the Shafers by A&M Towing's attorney through Shafer Industrial's attorney. For the purpose of determining whether it was reasonable for Shafer Industrial to continue to rent a truck rather than pay the balance, the specifics of the letter are not important. Shafer Industrial need only have been aware that A&M Towing sought the payment of outstanding balances.

{¶24} In any event, Nancy testified in her deposition and at trial that she probably knew of the letter's existence and had read it. Probably satisfies the preponderance of the evidence standard. *See, e.g., Burre v. Utt*, 2025-Ohio-29, ¶ 27, quoting Black's Law Dictionary (6th Ed. 1990) ("'[p]reponderance of the evidence' is 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it;

that it, evidence which as a whole show that the fact sought to be proved is *more probable than not*") (emphasis added). The due deference owed to the finder of fact does not require this court to accept that probably actually means not sure. *Thompkins*, 78 Ohio St.3d at 387 (when considering the manifest weight of the evidence the reviewing may disagree with the trier of fact).

{¶25} In the present case, Shafer Industrial incurred $90,203.75 in truck rental fees despite knowing that the total estimate for the repair work was only $22,138.87 ($15,000 of which had already been paid), and despite being aware (or at least probably being aware) that A&M Towing sought the payment of the outstanding balance. The dissent maintains that this was reasonable business practice but gives no indication where the limits of such reasonableness lie. The statute of limitations for replevin is four years. R.C. 2305.09(B). Would it have been reasonable for Shafer Industrial to continue renting for an additional two to four years and increase its damages to over $300,000 before filing suit? Nothing in the dissent's analysis would prevent such a result.

{¶26} For these reasons, we vacate that part of the lower court's judgment awarding Shafer Industrial $90,203.75 for truck rental. This matter is remanded for the trial court to redetermine an appropriate award of damages, if any, associated with truck rental consistent with this opinion. The award of $8,501.77 for the deteriorated condition of the truck remains unchanged inasmuch as A&M Towing had a duty to exercise reasonable care of the truck while it was in its possession. *Abercrombie v. BP Procare*, 1998 WL 166120, *2 (8th Dist.).

{¶27} The second assignment of error is with merit.

***Exclusion of A&M Towing's offer was erroneous***

Case No. 2025-T-0002

{¶28} In the third assignment of error, A&M Towing argues that the trial court erred by excluding evidence of a settlement offer presented to Shafer Industrial by its attorney under Evidence Rule 408. Alternatively, A&M Towing argues that the weight of the evidence confirms that Nancy Shafer was "at a bare minimum on notice" that A&M Towing was willing to return the truck if Shafer Industrial would make payment. Appellant's merit brief at 29. As explained above, notice was crucial in evaluating the reasonableness of Shafer Industrial's mitigation, a fact which also bears on the propriety of the court's evidentiary ruling.

{¶29} "[A] trial court has broad discretion to determine the admissibility of evidence in a case, so long as that discretion is exercised "'in line with the rules of procedure and evidence.'" (Citation omitted.) *State v. Brunson*, 2022-Ohio-4299, ¶ 26. Accordingly, the court's decision regarding the applicability of Evidence Rule 408 is reviewed for abuse of discretion. As to whether Shafer Industrial had notice of A&M Towing's offer to settle, the standard as before is manifest weight of the evidence.

{¶30} "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." Evid.R. 408. However, "[t]his rule also does not require exclusion when the evidence is offered for another purpose, such as … negativing a contention of undue delay." *Id.*

{¶31} Consistent with the plain language of the rule, A&M Towing asserts that the testimony regarding the settlement offer was not proffered to establish the validity or the amount of its claim, but "to contradict Shafer's contention of 'undue delay'" in repairing or

returning the truck. Appellant's merit brief at 26. Again, we agree. The letter itself was not proffered into evidence nor were the precise terms of the settlement offer. Nancy was not questioned about the letter in order to establish liability or the amount of the claim, but to "negative" the finding that Shafer Industrial did not know about the deficiency balance or A&M Towing's delay or willingness to return the truck if the balance were paid. Given the importance of this finding to the magistrate's legal conclusions, the testimony should have been allowed (as it was allowed pending the magistrate's ruling on the objection).

{¶32} In dicta, the trial court also held that, even if admissible, the testimony in question failed to establish notice. The settlement offer was contained in a letter from counsel for A&M Towing to counsel for Shafer Industrial dated October 29, 2021. When asked at deposition if she was aware of the letter and/or the settlement offer Nancy replied that she "probably" was. At trial, when asked if she was aware that A&M Towing was willing to return the truck if Shafer Industrial paid the deficiency balance, Nancy replied "no."

{¶33} When confronted with her deposition testimony, however, she changed her answer to "probably" [2]. Given the foregoing testimony, the lower court's judgment that "Nancy was not able to testify with any certainty as to whether or not she had known about such an offer" is not supported by the record. On the contrary, she "probably," i.e., more likely than not, knew of the offer.

{¶34} Regardless, Shafer Industrial's attorney's knowledge of the offer and reasons for the delay was imputable to the client. *Ciganik*, 2004-Ohio-6029, at ¶ 25 (11th Dist.). In sum, Nancy's testimony should not have been excluded and was material to the

---

2. We note that A&M Towing's merit brief at page 28 states that her response was "yes." However, this court's version of the transcript records her response as "probably."

Case No. 2025-T-0002

issues before the court.  See Magistrate's Decision ("[w]ithout knowledge of why A&M was refusing to repair or return the Truck, the Court finds that Shafer would have been subject to undue risk and expense had it stopped paying for the rental truck as it was necessary to fulfill Shafer's obligations to a customer").  Given the importance of notice in the magistrate's conclusions, we find reversible error.

{¶35}  The third assignment of error is with merit.

{¶36}  For the foregoing reasons, the judgment of the lower court is reversed with respect to the $90,203.75 for truck rental and remanded for further proceedings consistent with this opinion.  In all other respects the judgment of the lower court is affirmed.  Costs to be taxed against the parties equally.


JOHN J. EKLUND, J., concurs,

EUGENE A. LUCCI, J., concurs in part and dissents in part with a Dissenting Opinion.

_____


EUGENE A. LUCCI, J., concurs in part and dissents in part with a Dissenting Opinion.

{¶37}  I respectfully dissent from the majority's reversal on the second and third assignments of error. I would affirm the trial court's judgment in its entirety, including the award of $90,203.75 in rental truck damages to Shafer Industrial.

**Standard of Review Requires Deference to Credibility Determinations**

{¶38}  Although this court generally reviews a trial court's action on a magistrate's decision for an abuse of discretion, where an appellant challenges the trial court's factual determinations, this court has applied the manifest weight standard of review. *Butera v.*

Case No. 2025-T-0002

*Beesler*, 2023-Ohio-2257, ¶ 19 (11th Dist.). The majority correctly articulates the manifest weight standard but fails to apply it with the requisite deference. Under *State v. Thompkins*, we may reverse only "'in the exceptional case in which the evidence weighs heavily against the [judgment]'" and where the factfinder "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" 1997-Ohio-52, ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). This demanding standard exists precisely because trial courts are in the superior position to assess witness credibility and weigh conflicting testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) ("The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."). Where a case is tried to a magistrate, a trial court, when conducting its independent review of objections, may defer to the magistrate's credibility determinations. *Spellman v. Kirchner*, 2020-Ohio-3240, ¶ 58 (11th Dist.), citing *Tabatabai v. Tabatabai*, 2009-Ohio-3139, ¶ 14 (9th Dist.) ("The independent review requirement of Civ.R. 53(D)(4)(d) does not prohibit the trial court from deferring to the magistrate's resolution of credibility because the magistrate retains a superior position, as the trier of fact, to consider the demeanor of witnesses and evaluate their credibility.").

{¶39} Here, the magistrate made explicit credibility determinations that directly bear on the mitigation analysis. The magistrate found Gregory and Nancy Shafer "credible" while describing LaNeve's testimony as "incredibly uncooperative and vague" with "evasive" behavior that undermined his credibility regarding "the deficiency balance

and ever demanding such a balance from Shafer." Magistrate's Decision, Findings of Fact, at ¶ 25. These credibility findings are amply supported by the trial testimony.

**LaNeve's Testimony Demonstrated Poor Credibility**

{¶40} LaNeve's cross-examination revealed troubling inconsistencies and evasiveness that fully support the magistrate's credibility assessment:

- He did "[a]bsolutely nothing" to prepare for his deposition and claimed Shafer's attorney "confiscated" his notes;

- He gave directly contradictory testimony during his deposition about whether he had all parts to fix the truck, first answering, "Yes," then later, "No," to the identical question;

- He initially denied knowing Shafer was renting a replacement truck, then when confronted with the October 2021 letter from Shafer's prior counsel, showing rental costs over $59,000, admitted receiving and reading it— despite previously testifying under oath he "never [saw] any documents stating that they had a rental truck"; and

- He admitted his business policy was not to finish work until past due balances were paid, but he failed to clearly communicate this to the Shafers.

**The Shafers' Testimony Demonstrated Lack of Knowledge**

{¶41} In stark contrast, the Shafers' testimony consistently showed they lacked the specific knowledge necessary for reasonable mitigation:

**Gregory Shafer's testimony established:**

- By June 2021, LaNeve said he had the right pump, which was "pretty much the end of our phone conversations";

- Later attempts to contact LaNeve were unsuccessful; and

- He told LaNeve only once or twice about the $6,900 per month rental expense but received no clear response about alternatives.

**Nancy Shafer's testimony was particularly telling:**

- She never received any bills showing how the $15,000 deposit had been used;

- She never received invoices showing the work completed versus the remaining balance;

- When defense counsel mentioned a "deficiency balance," Nancy asked, "May I ask you a question about this deficiency balance?" showing she did not understand the term;

- Regarding the October 2021 letter from A&M's counsel, Nancy's testimony was consistently uncertain, stating: "I probably was [made aware]" of the letter, and "I probably did [read it]"; and

- When asked to clarify "probably," she confirmed it meant "maybe you were and maybe you weren't[.]"

**The Magistrate's Mitigation Analysis Was Reasonable and Supported**

{¶42} The duty to mitigate "does not require the party to incur extraordinary expense and risk." (Citation omitted.) *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 1999-Ohio-62, ¶ 29. More importantly, mitigation presupposes knowledge of the circumstances requiring mitigation. The magistrate reasonably concluded that "without knowledge of why A&M was refusing to repair or return the Truck, the Court finds that Shafer would have been subject to undue risk and expense had it stopped paying for the

rental truck as it was necessary to fulfill Shafer's obligations to a customer." Magistrate's Decision, Plaintiff's Breach of Contract Claim, at ¶ 12.

{¶43} This conclusion finds strong support in the trial testimony showing:

- Nancy never received a specific breakdown of how the $15,000 deposit was used;

- Nancy never received an invoice showing the claimed $6,200 balance or its basis;

- Nancy had no direct contact with LaNeve beyond giving a credit card number for the deposit; and

- A&M was retaining the truck largely "because of the two unpaid invoices for the unrelated service calls, not the deficiency balance . . . ." Magistrate's Decision, Findings of Fact, at ¶ 26.

**The October 2021 Letter From A&M's Counsel Does Not Establish Clear Notice**

{¶44} The majority's reliance on the October 2021 correspondence from A&M's counsel is misplaced.

{¶45} During A&M's cross examination of Gregory, he indicated that he was aware that Shafer's prior counsel sent a letter to A&M's counsel in October 2021. A&M's counsel then asked if Gregory recalled A&M's letter sent in response the same month. Shafer's counsel objected, and A&M's counsel maintained that his questions regarding the letter were posed to prove that Shafer "received an offer to pick up the truck and pay the deficiency balance." The magistrate took the arguments under advisement, held the objection in abeyance, and permitted questions regarding A&M's letter. Thereafter,

Case No. 2025-T-0002

Gregory testified that he was not aware of any offer to pay A&M a certain sum of money in exchange for return of the truck.

{¶46} During A&M's cross examination of Nancy, counsel again referenced A&M's October 2021 response letter. Nancy's testimony reveals, at best, uncertain knowledge of this communication. Her repeated use of "probably" when asked about awareness and reading of the letter demonstrates the tentative nature of any knowledge. As she testified, "probably" means "maybe you were and maybe you weren't[.]" This equivocal testimony cannot support a finding of clear notice sufficient to trigger mitigation duties.

{¶47} Further, although the majority imputes knowledge to Shafer of the facts contained in A&M's letter to Shafer's former counsel, little evidence as to the contents of this letter was offered at trial. Although the magistrate permitted A&M's counsel to question Gregory and Nancy regarding the letter, neither testified as to its particular terms. When offering exhibits for admission, counsel for A&M asked that the letter be admitted, and Shafer's counsel objected; whereupon counsel for A&M withdrew its request for admission. Thus, the trial evidence does not establish what knowledge Shafer's former counsel acquired from A&M's counsel.

{¶48} Moreover, even if knowledge of a general offer to return the truck could be imputed to Shafer or gleaned from the testimony of Gregory or Nancy, Nancy's testimony demonstrates that she received no specific breakdown of amounts allegedly owed for truck repairs versus other services. Without knowing the precise terms on which A&M would release the truck, Shafer could not reasonably evaluate mitigation alternatives.

**A&M Failed to Meet Its Burden of Proof**

Case No. 2025-T-0002

{¶49} The burden of proving failure to mitigate rests squarely on the defendant raising the defense. *State ex rel. Martin v. Columbus*, 58 Ohio St.2d 261, 265 (1979). The magistrate found that A&M "failed to meet its burden to demonstrate that Shafer failed in its duty to mitigate damages." Magistrate's Decision, Plaintiff's Breach of Contract Claim, at ¶ 12.

{¶50} LaNeve's own testimony undermines A&M's mitigation argument. He admitted his business policy was to stop work when clients had "past due invoices" and place them on "COD." Yet, he failed to clearly communicate this policy to the Shafers or explain what specific payments would secure the truck's release. His contradictory statements about the availability of parts and his failure to return phone calls demonstrate why the magistrate found A&M's communication inadequate.

**The Majority Improperly Reweighs Credibility-Based Evidence**

{¶51} The majority attempts to overcome the magistrate's credibility-based findings by claiming Shafer "must have known" about the deficiency balance because the repair order exceeded $15,000. This analysis ignores the actual trial testimony and substitutes the majority's judgment for the magistrate's credibility assessments.

{¶52} Nancy's testimony directly addressed this issue. She testified she would have responded "to any kind of communication . . . about the $15,000 deposit and how [A&M] used it" and would have responded to "information of any kind of . . . work [A&M] did and what was remaining to be done out of" the remaining balance. The problem was not unwillingness to pay, but lack of communication from A&M about what was owed and what work had been completed.

Case No. 2025-T-0002

{¶53} "'The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *Hays v. Young*, 2024-Ohio-3149, ¶ 42 (11th Dist.), quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "'A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it.'" *Hays* at ¶ 42, quoting *State v. Fetty*, 2012-Ohio-6127, ¶ 58 (11th Dist.).

{¶54} The magistrate's finding that A&M never "demand[ed] payment from Shafer for any work done to the Truck that went beyond the $15,000.00 deposit" is fully supported by Nancy's testimony that she never received bills showing deposit usage or invoices for additional work to the truck at issue.

**Reasonable Business Conduct Should Not Be Penalized**

{¶55} Gregory Shafer's testimony established that the truck was "critical to operations, used 5+ days per week under a contract since 1992" for "daily water evacuation at a plant and spill response." Faced with A&M's poor communication and unresponsiveness, continuing the rental to fulfill these customer obligations was entirely reasonable business conduct.

{¶56} The majority's analysis would require parties to abandon their business operations based on speculative knowledge of disputed contract terms. This creates perverse incentives and rewards the very type of poor communication that A&M demonstrated throughout this matter.

**Conclusion**

{¶57} The magistrate was presented with sharply contrasting witness credibility. On one side were the Shafers, whose testimony consistently showed they lacked

Case No. 2025-T-0002

knowledge of specific amounts owed and received inadequate communication from A&M. On the other side was LaNeve, whose testimony was riddled with contradictions, evasiveness, and admissions of poor communication practices.

{¶58} Based on these credibility determinations, the magistrate reasonably concluded that A&M failed to prove Shafer's failure to mitigate. The majority's contrary conclusion requires rejecting the magistrate's credibility findings and reweighing evidence in a manner that exceeds our proper appellate role.

{¶59} The trial testimony amply supports the magistrate's conclusion that Shafer acted reasonably given A&M's inadequate communication. Nancy's uncertain recollection of the October 2021 letter, combined with the lack of specific information about amounts owed and alternatives available, does not establish the clear knowledge necessary to trigger enhanced mitigation duties.

{¶60} Further, the record contains no evidence of the particular terms of A&M's October 2021 letter to Shafer's former counsel. Thus, the evidence does not support what notice was given to Shafer's former counsel which could be imputed to Shafer.

{¶61} For these reasons, I would conclude that A&M's second assigned error lacks merit.

{¶62} Last, because the evidence that was offered regarding A&M's letter merely indicated that Gregory and Nancy may have been aware of its existence, A&M suffered no prejudice by the exclusion of their testimony on this issue. On that basis alone, I would determine that A&M's third assigned error lacks merit.

Case No. 2025-T-0002

{¶63} For these reasons, I would affirm the judgment of the trial court in its entirety, including the award of $90,203.75 in rental truck damages. The costs should be taxed solely against A&M Towing as the unsuccessful appellant.

Case No. 2025-T-0002

## JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the second and third assignments of error are with merit. The order of this court is that the judgment of the Trumbull County Court of Common Pleas is reversed in part and this matter is remanded for further proceedings. The judgment of $90,203.75 in favor of Shafer Industrial is vacated. In other respects, the judgment of the lower court is affirmed.

Costs to be taxed against the parties equally.


_____
JUDGE SCOTT LYNCH


_____
JUDGE JOHN J. EKLUND,
concurs


_____
JUDGE EUGENE A. LUCCI,
concurs in part and dissents in part with a
Dissenting Opinion


**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0002